ROBERT SMITH,                                          *
12404 Coastal Marsh Drive
Berlin, MD 21811                                       *         IN THE

     Plaintiff,                                   *         CIRCUIT COURT

v.                                                    *         FOR

NVR, INC.                                             *         WORCESTER COUNTY
Trading as Ryan Homes
11700 Plaza America Drive                             *         STATE OF MARYLAND
Suite 500
Reston, VA 20190                                      *

Serve On: CSC – Lawyers Incorporating *              CASE NO.:     C-23-CV-24-000191
Service Company
7 St. Paul Street                                     *
Suite 820
Baltimore, MD 21202                                   *

     Defendant.                                   *

*       *       *       *       *       *       *       *       *       *       *       *       *

## COMPLAINT

Plaintiff, Robert Smith, by his attorney Brian P. Cosby and Niles, Barton & Wilmer, LLP.

files this Complaint against NVR, Inc., trading as Ryan Homes and for cause states:

## PARTIES

1.  At all times relevant hereto, the Plaintiff, Robert Smith, is an individual residing at 12404

    Coastal Marsh Drive, Berlin, Maryland 21811.

2.  At all times relevant hereto, Defendant, NVR, Inc. ("NVR") trading as Ryan Homes, is a

    Virginia corporation doing business in Worcester County, Maryland, related to the

    construction and sale of new homes and real property in a project called "The Landings at

    Bayside".

1

**EXHIBIT
1**

**JURISDICTION & VENUE**

3. Jurisdiction lies in Worcester County, Maryland because the Plaintiff and the Defendant reside and do business here and because the real property which is the subject of this case is located here.

**COMMON FACTS**

4. On or about May 4, 2023, the parties entered into a contract for the Plaintiff to purchase Lot #55 in The Landings at Bayside subdivision located in Worcester County, Maryland, near Stephen Decatur Highway (MD Route 611), and for NVR, Inc. to construct a new home on the lot for $621,615.00 including a $30,000.00 Homesite Premium.  See Maryland Purchase Agreement attached hereto as Exhibit 1 ("Contract"). As a result of the larger size of the lot and because it had canal access, the Plaintiff was charged a $30,000 lot premium.  See Price and Selection sheets attached as Exhibit 1.

5. In negotiations and discussions prior to the ratification of the Contract, Jay Carlson, a sales agent of NVR, orally and visually represented to the Plaintiff that Lot 55 extended to, and had access to, the Grand Canal. The Plaintiff walked the lot with Mr. Carlson, who physically showed the Plaintiff where the lot intersected the canal. Mr. Carlson also showed the Plaintiff a plat substantially the same as Exhibit 2 attached showing Lot 55 extending to the canal.

6. In reliance upon Mr. Carlson's oral representations and the plat attached as Exhibit 2 showing that Lot 55 was a canal front property, the Plaintiff proceeded to enter the Contract and to pay the $30,000.00 Homesite Premium.

7. NVR thereafter proceeded to construct the Plaintiff's home. During that process, NVR constructed a silt fence which the Plaintiff presumed to be the property line as represented by Mr. Carlson. NVR also installed an underground water irrigation system and installed grass sod up to the silt fence. After signing the contract, the Plaintiff worked with Michael Kibler, the Project Manager for construction. Mr. Kibler also assured the Plaintiff that the lot went to the canal. Prior to closing on the Contract, NVR represented by its agent's words, conduct and actual physical construction of the silt fence, the installation of the irrigation system and the grass sod that the Plaintiff's lot was configured so as to be a canal front property as represented by Mr. Carlson on Exhibit 2 attached.

8. In reliance upon the oral representations of Mr. Carlson and Mr. Kibler, the plat attached as Exhibit 2 and the actual physical construction of the improvements as set forth above, the Plaintiff proceeded to settlement and purchased the home and property on October 27, 2023, using the loan and closing services of NVR Mortgage Finance, Inc. ("NVRM"). See Deed dated October 27, 2023 recorded in the Land Records for Worcester County, Maryland at Liber 8663, Folio 273, et. seq., attached hereto as Exhibit 3.

9. After closing on or about October 27, 2023, the Plaintiff noticed surveyors in his yard on or about January 8, 2024 and setting survey stakes. Upon inquiry, the Plaintiff was advised by employees and agents of NVR that a new home was being constructed next door on Lot #56 and that the property line was not as represented by Mr. Carlson, Mr. Kibler and another Production Manager, Alex Moor, and as represented by the plat, the silt fence, grass sod and installation of the Plaintiff's irrigation system. The Plaintiff then learned that the record plat for Lot 55 is substantially smaller and does not front on the

Grand Canal, as shown on the plat entitled, "The Landings Residential Planned Community" attached as Exhibit 4.

10. Despite the Plaintiff's continuing protest, NVR proceeded with construction on Lot 56. In that process, NVR tore down the silt fence and dug up and removed the Plaintiff's irrigation system and a substantial portion of the sod in the Plaintiff's yard, and established a new physical property line and silt fence between Lots 55 and 56.

11. As a result of NVR's changes in the property line as represented to the Plaintiff, the Plaintiff's Lot 55 no longer has canal frontage, and the square footage of the Plaintiff's back yard has been substantially reduced.

## COUNT I
### Breach of Express Warranty
### (Real Property Article § 10-202)

12. All of the matters and facts as set forth in paragraphs 1-11 are incorporated herein by reference.

13. Section 10-202(a)(1) of the Real Property Article provides that any written affirmation of fact or promise which relates to the improvement and is made a basis of the bargain between the vendor and the purchaser creates an express warranty that the improvement conforms to the affirmation.

14. Section 10-202(a)(2) of the Real Property Article provides that any written description of the improvement, including plans and specifications of it creates an express warranty that the improvement conforms to the description.

15. Section 10-202(a)(3) of the Real Property Article provides that any sample or model which is made a part of the basis of the bargain between the vendor and the purchaser creates an express warranty that the improvement conforms substantially to the sample or

model. Pursuant to § 10-201 of the Real Property Article, NVR is defined as a "vendor" and the Plaintiff as a "purchaser".

16. NVR's construction of the silt fence and the installation of grass sod and the irrigation system and its representation that Lot 55 was as shown on the plat attached as Exhibit 2 constituted actual models, samples and visual and written representations and affirmations of the actual lot line of Lot 55. Those samples, models and visual representations and affirmations were a substantial part of the basis of the bargain between the parties that the Plaintiff was purchasing a canal front property containing more land than was actually received.

17. As a result of NVR's breach of the express warranties provided in Section 10-202(1)(2) and (3), the Plaintiff has suffered a substantial loss in value of the land that he purchased, and did not get the property for which he paid a $30,000.00 lot premium.

WHEREFORE, it is respectfully requested that judgment be entered for compensatory damages in excess of the amount of $180,000.00 and for such other relief as is just.

### COUNT II
**Consumer Protection Act**
**Unfair and Deceptive Trade Practices**
**(Commercial Law Article § 13-301)**

18. All of the matters and facts as set forth in paragraphs 1-17 are incorporated herein by reference.

19. Pursuant to the Commercial Law Article of the Maryland Annotated Code § 13-301 et. seq., ("Consumer Protection Act"), NVR engaged in unfair and deceptive trade practices as defined in section 13-301 of the Act by making false and misleading oral statements and visual depictions that had the effect of deceiving and misleading the Plaintiff to

believe that he was purchasing a canal front lot of larger size than that he actually received and for which he paid a $30,000.00 Homesite Premium. The lot purchased by the Plaintiff does not have the characteristics, uses or benefits that were orally and visually represented to the Plaintiff, in that it is not located on the canal and it is smaller than represented, and he did not get the benefit of the $30,000.00 lot premium that he paid.

20. As a result of NVR's misrepresentations, the Plaintiff has suffered a substantial loss in value of the land that he purchased and the benefit of his lot premium.

21. Pursuant to section 13-408 of the Act, this court may award reasonable attorney's fees if damages are awarded to the Plaintiff under the Act. NVR is a merchant who directly offers and makes available consumer realty to consumers, and the Plaintiff is a consumer of consumer realty.

     WHEREFORE, it is respectfully requested that judgment be entered for compensatory damages in excess of the amount of $180,000.00 and that the Plaintiff be awarded reasonable attorney's fees and costs and for such other relief as is just.

## COUNT III
### Negligent Misrepresentation

22. All of the matters and facts as set forth in paragraphs 1-21 are incorporated herein by reference.

23. NVR owed the Plaintiff a duty of care not to misrepresent material facts related to the Plaintiff's purchase of Lot 55. NVR and its agents falsely represented both orally and visually that Lot 55 was of a certain size, configuration and dimension and that it was canal front property.

24. NVR intended that the Plaintiff would act in reliance upon NVR's oral and visual representations, and it knew or should have known that the Plaintiff would so rely.

25. The Plaintiff justifiably relied upon NVR's oral and visual representations and has suffered substantial consequential damages as a result.

WHEREFORE, it is respectfully requested that judgment be entered for compensatory damages in excess of the amount of $180,000.00 and that the Plaintiff be awarded reasonable attorney's fees and costs and for such other relief as is just.

## COUNT IV
### Breach of Contract

26. All of the matters and facts as set forth in paragraphs 1-25 are incorporated herein by reference.

27. The Plaintiff entered the contract attached marked as Exhibit 1, under the belief that Lot 55 was substantially larger and was a canal front lot, all based upon NVR's oral and visual representations before and after the contract was signed, and for which he paid a $30,000.00 Homesite premium.

28. The Plaintiff did not learn until after he closed upon the purchase of the property that Lot 55 was not as large on the record plat as NVR represented to him on the Plat attached as Exhibit 2, and that it was not canal front property.

29. The Plaintiff has lost a substantial portion of the benefit of his bargain pursuant to the contract as a direct result of NVR's false oral representations and false actual visual representations and depictions of Lot 55, giving the property an illusory value and use that it does not in fact have.

30. The Plaintiff has suffered consequential damages as a result of Lot 55 not actually having the size and configuration that was represented and because it is not a canal front lot, all as orally and visually represented to the Plaintiff.

    WHEREFORE, it is respectfully requested that judgment be entered for compensatory damages in excess of the amount of $180,000.00 and that the Plaintiff be awarded reasonable attorney's fees and for such other relief as is just.

**COUNT V**
**Deceit**

31. All of the matters and facts as set forth in paragraphs 1-30 are incorporated herein by reference.

32. NVR's agents and employees made false representations of material facts related to the size, configuration and location of the Plaintiff's Lot 55.

33. NVR's false representations were made with reckless indifference to the truth and it is thus reasonable to charge NVR with knowledge of such falsity.

34. NVR intended that the Plaintiff would act in reliance upon its false statements and visual representations.

35. The Plaintiff justifiably relied upon the representations of NVR.

36. As a result of his reliance upon the false representations of NVR, the Plaintiff has suffered substantial consequential damages, including without limitation the loss of the value and use of his property as represented to him by NVR.

    **WHEREFORE**, it is respectfully requested that judgment be entered for compensatory damages in excess of the amount of $180,000.00, exemplary damages in the amount of $50,000.00, reasonable attorney's fees and such other relief as is just.

8

Respectfully submitted,

*/S/ Brian P. Cosby*
Brian P. Cosby (AIS# 8011010077)
Niles Barton & Wilmer, LLP
12417 Ocean Gateway, Suite B13
Ocean City, Maryland 21842
Tel: (410) 783-6396
bpcosby@nilesbarton.com
*Counsel for Plaintiff, Robert Smith*

## DEMAND FOR JURY TRIAL

The Plaintiff elects a trial by jury of all issues triable of right by a jury.

## MD. RULE 20-201 CERTIFICATION

I HEREBY CERTIFY that the submission does not contain any restricted information or, if it does contain restricted information, a redacted submission has been filed contemporaneously pursuant to subsection (h) of this Rule.

*/S/ Brian P. Cosby*
Brian P. Cosby (AIS# 8011010077)

E-FILED; Worcester Circuit Court
Docket: 9/4/2024 10:15 AM; Submission: 9/4/2024 10:15 AM
Envelope: 17873294

# EXHIBIT 1

Lot ___0055___ Block _____
Date of Purchase Agreement _05/04/23_
BERLIN,MD 21811

Community **The Landings at Bayside**
Property Address **12397  HIDDEN BAY DRIVE**

# MARYLAND PURCHASE AGREEMENT

THIS PURCHASE AGREEMENT (the "Agreement") is made as of the __4_ day of _____May_____, 20_23_, by and between NVR, INC., t/a ___Ryan Homes___, a Virginia corporation ("Seller", "Us", "Our" or "We") and _____Robert Smith_____ (purchaser) and _____ (co-purchaser), presently residing at _____187 Sandyhook Rd  Berlin,MD 21811_____ (telephone) _____(301) 639-5833_____ (individually and collectively "Purchaser", "You" or "Your").

1. **What You are buying.** The Property You are buying is:
Lot # _____00000055_____, Section # _____, Block # _____, Subdivision **The Landings at Bayside** _____ (the "Community"), County or City of _____BERLIN_____, State of Maryland (the "Lot"), together with a home to be built on the Lot by Seller according to Seller's plans and specification known as the _____GREENWOOD_____ Model, Set/Version # **GNW00-01**_____, including those options you have selected on the attached Master Selection Sheet. We will call this the "Home" and, with the Lot, the "Property" throughout this Agreement.

The Home may not be exactly like any of the model homes You may have seen. The Home, the Community, and the respective features and amenities of each may be different than what You have seen in our advertisements and marketing information. You agree that we are responsible for the Home and the features and amenities only as set forth in this Agreement. The Home will be constructed based on construction drawings (or blueprints), the grading plan, floor plans, and other plans and drawings, together with the options You selected on the Master Selection Sheet, which is incorporated into this Agreement by reference, and any Change Orders we mutually agree to during the time Change Orders are allowed to be submitted as provided in the Change Order Policy provided below. All of these together are called the "Plans and Specifications". If you review blueprints or floor plans in the course of purchasing the Home or making selections, You might not review all of the Plans and Specifications applicable to the construction of your Home. You acknowledge that there are many ways to measure square footage so the final square footage of the Home may be different than that which is initially shown to You due to the method of measurement.

We offer You a wide variety of options to personalize Your Home to meet Your individual needs and requirements. Many of the components needed to construct the Home must be ordered well before construction begins and any changes after the date of this Agreement could affect the start of construction, loan approval process and closing of Your Home. In addition, many changes requested after the date of this Agreement require additional engineering, engineering, permit and loan approval actions, which may make the changes not only cost prohibitive, but can cause significant time delay.

All change requests are subject to Our approval. We are under no obligation to accept any change request beyond these change periods. We firmly adhere to this policy in order to best serve You and deliver the Home without delays.

The following is Our "Change Order Policy". Structural option change requests will be accepted within __7_ days after Your execution of the Agreement. All Change Order Addenda must be signed by You (if more than one, all Purchasers must sign) and submitted to Your Sales Representative within this __7_ day time period or the change request will not be accepted or processed.

Non-structural option selections and/or change requests will be accepted as described below. All Change Order Addenda must be signed by the Purchaser (if more than one, all Purchasers must sign) and submitted to Your Sales Representative within this time period or the change request will not be accepted or processed.

**The final date that requests for flooring changes will be accepted is on or before:** ____05/18/2023____.
**The final date that requests for wiring changes will be accepted is on or before:** ____05/18/2023____.
**The final date that requests for all other non-structural changes will be accepted is on or before:** ____05/18/2023____.
☐ **If the box to the left is checked, no changes will be allowed for this Property.**

We make no representations or warranties about what other improvements may be constructed within the Community including home types, sizes, location or prices or the uses of property adjacent to the Property or to the Community. Any plans or information You may have seen for this community are subject to change. Unless otherwise stated in an addendum to this Agreement, We have no obligation to provide You with copies of the preliminary or final site plans, the record plat, blueprints, general plan maps or other planning documents which may affect the planning and development of the surrounding area. Also, utility transformers are the sole responsibility of the utility companies and we have no authority to determine where utility transformers may be located on the Property or anywhere in the Community.

You acknowledge that the timing of construction, location, existence, size and features of tot lots, trails, community entry features and monuments, and recreational facilities within the Community (collectively the "Facilities"), if any, are subject to change. No representations as to the timing, location, size or features of such Facilities are part of this Agreement.

You are purchasing the Property as [CHECK BOX  A, B, C  OR  D BELOW]:

☒    A.    Your principal residence and will occupy and reside in the Property.

☐    B.    a model home pursuant to the attached Model Home Addendum.

☐    C.    a second home.

☐    D.    an investor. The Property will not be Your principal residence and You will not occupy and reside in the Property. You are not acquiring the Property as a second home. If this box is checked, Paragraph 4 does not apply to You

You hereby represent and warrant to Us the truth and accuracy of the statements made above and You understand and agree that We are relying on the truth and accuracy of these statements as a material inducement to Our entering into this Agreement with You. If Your statements made above are found to be untrue or inaccurate, or if Your status changes prior to Settlement, You will be deemed to have checked the box above that truly and accurately reflects the circumstances involving Your purchase of the Property. In such event, We may require You to increase the Deposit, at Our discretion. Under such circumstances, You would be required to pay such Deposit increase to Us within ten (10) days after Our request for such additional Deposit is made. Your failure to fund any such increase of the Deposit shall be deemed to be a material breach of the Agreement.

2. **Sales Price and Payments.** You agree to pay to Seller for the Property, including the options listed on the Master Selection Sheet, the sum of $_____621,615.00_____ (the "Purchase Price") payable as follows:

    (a) Cash earnest money deposit upon Purchaser's signing of this Agreement............................................ **$10,000.00**
    (b) An additional payment in cash due on or before ___6/4/2023___ .................................... **$30,000.00**
    (c) The balance in immediately available funds on the Actual Settlement Date hereunder............................ **$581,615.00**

    The term "Deposit" shall mean all amounts due from Purchaser to Seller pursuant to Paragraphs 2(a) and 2(b). Any checks accepted by Seller shall be subject to collection and payment. All refunds or credits to Purchaser of the Deposit shall be without interest, except as provided in Paragraph 12(b).

3. **Payment of Closing Costs and Cash Discount.** You are responsible for payment of all "Closing Costs" unless You are otherwise eligible for the Cash Discount as defined by this Paragraph and as permitted by applicable law.

"Closing Costs" are the fees and charges charged by Your lender and third parties related to the purchase and finance of your Home. Closing Costs include all charges due to Your lender, home insurance premiums, mortgage insurance premiums, title insurance premiums, Your attorney's fees, realtor commissions (unless We have agreed to pay these for You), all recordation fees and taxes (even if typically paid by a seller or grantor), and any other fees charged for the Settlement. In the event You are a VA guaranteed or FHA insured borrower, or if You are a first time homebuyer in Maryland, the Cash Discount provided for in this paragraph shall be reduced by an amount equal to any Closing Costs that are required by the Lender or by State statute to be paid by Seller. SECTION 14-104 OF THE REAL PROPERTY ARTICLE OF THE ANNOTATED CODE OF MARYLAND PROVIDES THAT, UNLESS OTHERWISE NEGOTIATED IN THE CONTRACT OR PROVIDED BY STATE OR LOCAL LAW, THE COST OF ANY RECORDATION TAX OR ANY STATE OR LOCAL TRANSFER TAX SHALL BE SHARED EQUALLY BETWEEN BUYER AND SELLER.

A Cash Discount is a credit applied toward the payment of Closing Costs. The Cash Discount cannot exceed the amount of Closing Costs due.

**You have the right to obtain a loan from any lender You choose. In accordance with Section 17-524 of the Business Occupations and Professions of the Annotated Code of Maryland, You have the right to select the mortgage lender or financial institution, title lawyer, title insurance company, settlement company and escrow company, if any. However, We may not be prohibited from offering owner financing as a condition of Settlement.**

We have an affiliation with NVR Mortgage Finance, Inc. ("NVRM"). If You obtain Your mortgage loan through NVRM, You will be entitled to a Cash Discount of $25,000.00_____ at Settlement. The final amount of the Cash Discount is subject to reduction based upon Your selected loan amount and loan program requirements.

**If You select a lender other than NVRM, You are not eligible to receive the Cash Discount.**

**If You select NVRM as Your lender You are eligible for the Cash Discount.**

4. **How You intend to pay the Purchase Price.** [ ] If the box to the left is checked, You are paying the Purchase Price in cash (i.e., no mortgage loan) in which case this Paragraph does not apply to You.

If the box above is not checked, You intend to apply for a mortgage loan to pay the Purchase Price at Settlement, less any amounts (such as the Deposit) that You pre-pay. THIS AGREEMENT IS NOT EXPRESSLY CONTINGENT UPON YOUR OBTAINING FINANCING TO PURCHASE THE PROPERTY. Mortgage interest rates are dependent upon various market conditions as well as the credit profile of the borrower. As such, the interest rate of Your Loan Approval may vary from the current market interest rates.

In order for us to complete Your Home by the Estimated Settlement Date (which is given in Paragraph 8(a)), You are required to apply for a mortgage loan with a lender of Your choice within seven (7) days after You sign this Agreement. You are also required to diligently work with Your lender in good faith to obtain loan approval, which we will refer to in this Agreement as the "Loan Approval". While We will assist You in working with Your chosen lender, it is Your responsibility to respond to Your lender's request for information and meet all the conditions of Your loan application and the Loan Approval and to keep us informed of the status of Your application. You authorize Us to communicate with Your chosen lender and to disclose information regarding this transaction to the lender.

If You do not have Loan Approval within forty-five (45) days after the date of this Agreement (the "Loan Approval Period"), We will have the right to cancel this Agreement by providing written notice to You declaring the Agreement void and of no effect. In that event, if we believe You have not used good faith efforts to obtain Loan Approval, We will have the right to keep Your Deposit. If You did not obtain Loan Approval in spite of using Your good faith efforts to do so, You may send written notice to declare the Agreement void and of no effect if the notice is accompanied by written documentation from your lender evidencing Your inability to obtain Loan Approval. Upon receipt of such a letter from You, and provided You have otherwise complied with Your obligations under the Agreement, then we will refund Your Deposit once You sign Our Mutual Release Agreement. Alternatively, We could decide to extend the Loan Approval Period. However, if We determine that You are not using good faith efforts to obtain Loan Approval during the extended Loan Approval Period, We would have the right to terminate the Agreement and keep Your Deposit.

Once You obtain Loan Approval, it is Your responsibility to meet all of the conditions required by Your lender in order for You to complete Settlement on the Actual Settlement Date (as shown in Paragraph 8(a)). Once We issue the Settlement Notice defined in

Paragraph 8(a), no changes to the Loan Approval will be allowed. If the Loan Approval is terminated by the Lender due to circumstances beyond your control, and You are unable to obtain another Loan Approval prior to the Actual Settlement Date, We will terminate this Agreement and refund the Deposit to You after You sign Our Mutual Release Agreement.

Notwithstanding any other provisions of this Agreement, We may at any time prior to Settlement make a good faith determination that Your lender will not be able to timely approve and fund Your Loan or that the conditions established by Your lender are unlikely to be satisfied timely. In that event We may terminate this Agreement and refund to You Your Deposit (once you execute Our Mutual Release Agreement) and this Agreement would be without further force and effect.

We will provide a house location survey at Your expense if required by Your lender, however, such survey will not include the staking of the Lot boundaries unless otherwise provided by an addendum to this Agreement.

**5. No Contingencies.** Unless otherwise provided by addendum attached hereto, this Agreement in no way is contingent upon the sale, rental, settlement or other disposition of any other property You own.

**6. Limited Warranty.** In addition to all rights You have under the statutory implied warranty provided under Maryland law (the "Statutory Warranty"), You will receive the express written NVR limited warranty (the "Limited Warranty"), a copy of which has been provided to You at the time of this Agreement. The Limited Warranty is also available at http://myryanhome.com/Warranty.aspx or http://myryanhome.com/Warranty.aspx, whichever applies. We make no other express warranty on the Home. No other express warranty has been made in relation to this transaction or otherwise forms any basis for the bargain between the parties as defined in Maryland Annotated Code, Real Property Article (the "Code"), Section 10-202(a) or (b). The parties also expressly acknowledge that Seller is the only "Vendor" in this transaction, as that term is defined in Section 10-201(e) of the Code, notwithstanding the possibility that title to the Property may be conveyed to Purchaser from a third party.
    The terms of the Limited Warranty define the limits and conditions of coverage and the totality of Our express obligations to You under the Limited Warranty. You are encouraged to read the copy of the Limited Warranty provided and understand its contents before entering into this Agreement. No officer, employee or agent of Seller is authorized to grant any other warranty or representation beyond the provisions of the Limited Warranty and the Statutory Warranty. Nothing in the Limited Warranty is intended, directly or indirectly, to limit or modify Your rights under the Statutory Warranty.
    As to items installed in the Home which We have not manufactured, such as any air conditioner, water heater, refrigerator, range, dishwasher, and other appliance, equipment or "consumer products" as defined by the Federal Trade Commission, We agree to pass along to You the manufacturer's warranty (if any), without recourse to Us.

**7. Preconditions to Construction.** We are not required to start construction of the Home until We receive all of the following:
    (a) All cash payments as required in Paragraph 2 above within the time provided;
    (b) A written Loan Approval as required within the time period indicated in Paragraph 4 above (unless Paragraph 4 does not apply to You in which case, Loan Approval is not a precondition to construction);
    (c) Your selection of all options; and
    (d) All necessary governmental approvals and permits
    In the event We elect to commence construction prior to the receipt of (a), (b) or (c) above, You would still be obligated to complete those items.

**8. Completion of Construction; Settlement and Delivery.**
    (a) Settlement on the Property ("Settlement") is estimated to be completed on or about ___**12/15/23**___ (the "Estimated Settlement Date"). However, there are many variables which must be taken in consideration when scheduling Settlement, many of which We have no control over, such as Your Loan Approval, issuance of permits and the weather. Settlement will be scheduled by Us and We will give You no less than ten (10) days written notice (the "Settlement Notice") of the actual date of Settlement. We will call this the "Actual Settlement Date". At the time of Settlement, You will receive the keys and You will be able to move into Your new Home. If there is a need to reschedule Settlement after issuance of the Settlement Notice, then any notice as to the rescheduled date and time will be provided to You no later than two (2) days prior to the Actual Settlement Date. If You do not complete Settlement on the Actual Settlement Date, then You will be in default of this Agreement and We would have the rights and remedies outlined in Paragraph 12(a) against You.
    We are required to complete Settlement on Your Home within two (2) years after the date of this Agreement. If we do not complete Settlement within two (2) years, then you have the rights and remedies against us outlined in Paragraph 12(b). However, if Settlement is not completed by that deadline due to Your breach or default under this Agreement, or some other reason not of Our control (see Paragraph 8(b) for a list of such reasons), then Settlement could be extended beyond the two years and We would not be in default.
    If, prior to Settlement, We believe that You are no longer willing to complete Settlement, We may ask You to provide a written statement saying that You will complete Settlement. If You do not provide such a statement, or if You otherwise give Us notice that you do not intend to complete Settlement, then You would be in default of this Agreement and We would have certain rights and remedies against You as outlined in Paragraph 12(a).
    (b) There may be delays in construction or Settlement from causes beyond Our control, including, without limitation, acts or defaults by You; labor disputes of any kind; inability to procure materials or unusual delay in deliveries; delays or actions caused by government authority; government refusal to issue any necessary permits; delays caused by utility service providers; war, acts of terrorism, civil commotion or other casualty; damage caused by fire, earthquake, flood, hurricane or severe weather; disruptions resulting from a health crisis, such as an epidemic or pandemic; or any form of act of God. If We are delayed, hindered or adversely affected by any of the foregoing events or any other events of a similar nature, whether or not the underlying event is foreseeable at the time of execution of this Agreement, the time for complete performance of this Agreement by Us (to satisfy the Interstate Land Sales Full Disclosure Act ("ILSA")) and for Settlement shall be extended for a period of time equal to the length of the delay attributable to such cause, and We would not be liable for damages for any such delay or failure to perform.
    (c) You agree to complete Settlement when the Property is Substantially Complete. Substantially Complete shall be defined as the issuance by the local jurisdiction of a temporary or conditional certificate of occupancy or other document permitting residential use (the "Residential Use Permit") even if some items such as landscaping, driveways, final grading, exterior painting, and other minor punch-list items may not be completed. We will complete any such uncompleted items as soon as practicable, weather conditions permitting. In order to do so, We reserve the right to enter onto the Lot after Settlement to complete such exterior items without Your prior approval.
    (d) You have the right to schedule a private home inspection ("Inspection") of the Property by an independent certified home inspector at Your expense. However, the results of the Inspection must be received by Us no later than three (3) business days prior to

DocuSign Envelope ID: DFF2F3AA-1B28-4A74-BBF2-YE89A1EA492B5

the scheduled Settlement date. The Inspection must be performed by a full member in good standing of a national home inspection association in accordance with the ethical standards and code of conduct or practice of that association. Any home inspector must have insurance coverage acceptable to Us prior to entering the Property. You unconditionally indemnify and hold Us harmless from any injury to person or property occurring as a result of the Inspection. If You elect to hire an independent private home inspector, We will reasonably cooperate in scheduling an Inspection; however, the Inspection must be scheduled with no less than 48 hours advance notice to Us and the Inspection must take place during normal construction working hours. The Inspection must be coordinated with Us and may not interfere with construction or delay the construction schedule. Any deficiencies identified by the Inspection shall be promptly submitted to Us in writing along with a certified report of the home inspector. In the event any deficiency identified by the Inspection is considered a violation of any local codes or acceptable construction practices as defined in the Limited Warranty, We will correct such deficiency in a timely manner and the correction of any such deficiency shall not delay Settlement unless the deficiency is of such a nature as to make the Property uninhabitable

(e) We will have the right to enter upon the Lot at any time after Settlement for the purpose of making exterior changes to the Lot or to adjacent lots, including but not limited to grading and drainage system changes and the removal or planting of trees.

(f) If We encounter any unusual or difficult ground conditions on the Lot, We may offer You one or more or the following options: (i) choosing an alternative lot from among those We are offering in the Community, if one is available or (ii) signing a Mutual Release Agreement and receiving a refund of the Deposit You have previously paid, thereby terminating this Agreement.

(g) Except as set forth in subsection (d) of this Paragraph 8, You may not have access or entry to the Property or the construction site during construction, nor may You store any possessions on the Property or the construction site prior to Settlement. Any violation of this provision may, at Our election, be considered a default of this Agreement and, in addition to any other remedies available to Us, We may terminate this Agreement and keep Your Deposit as fixed and liquidated damages. If You violate this provision, You will be deemed to be trespassing and We assume no liability or responsibility for any injuries suffered by You while on the Property or construction site, and You indemnify Us from any and all injury, cost, loss or damage arising from Your actions.

(h) THE HOME SHALL BE CONSTRUCTED IN ACCORDANCE WITH ALL APPLICABLE BUILDING CODES IN EFFECT AT THE TIME OF THE CONSTRUCTION OF THE HOME. THE HOME SHALL BE CONSTRUCTED BY SELLER IN ACCORDANCE WITH THE PERFORMANCE STANDARDS AND/OR GUIDELINES: (i) ADOPTED BY THE NATIONAL ASSOCIATION OF HOME BUILDERS; OR (ii) ANY PERFORMANCE STANDARDS AND/OR GUIDELINES UTILIZED BY SELLER AT THE TIME OF CONSTRUCTION THAT ARE EQUAL TO OR MORE STRINGENT THAN THE PERFORMANCE STANDARDS AND/OR GUIDELINES OF THE NATIONAL ASSOCIATION OF HOME BUILDERS. THE FOREGOING APPLICABLE PERFORMANCE STANDARDS AND/OR GUIDELINES SHALL BE THE MEASURE OF THE PERFORMANCE BY SELLER UNDER THIS AGREEMENT AND ANY ARBITRATION OR ADJUDICATION OF A CLAIM ARISING FROM THIS AGREEMENT.

9. **Our Changes.**
(a) We have the right to substitute similar materials of substantially equivalent quality.
(b) We reserve the right to make changes in the Plans and Specifications for purposes of mechanical installations, building code and site requirements, and reasonable architectural design improvements subsequent to the date of this Agreement.
(c) We will determine, at Our discretion, the location and ground elevation of the Home on the Lot and the necessity, if any, to reverse the plan of the Home to conform to the existing Lot contours.

10. **Payment of Taxes and Utility Charges.** All taxes and utility charges, including, without limitation, sewer and water benefit charges and other public dues, taxes and charges will be adjusted to the Actual Settlement Date and You will thereafter assume responsibility for such charges. It is also Your responsibility to have all utility services to the Property transferred into Your name effective no later than the Actual Settlement Date. No funds shall be escrowed at Settlement for utility charges.

11. **Title.**
(a) At Settlement, title to the Property shall be conveyed by Special Warranty Deed and shall be good and marketable, fully insurable by a reputable American Land Title Association (ALTA) title insurance company subject, however, to (i) easements, covenants, conditions and restrictions of record, (ii) any statutory lien for ad valorem taxes which are not yet levied, published, due or payable, (iii) any homeowner's association documents restricting the use and enjoyment of the Property, (iv) zoning and other applicable laws and regulations, and (v) such facts as an accurate survey and personal inspection of the Property would reflect, provided same do not render title uninsurable or unmarketable. The Property is not subject to any ground rent. If title cannot be delivered at Settlement in compliance with this Paragraph, We may determine that we will remedy such title defects prior to Settlement at Our sole expense, in which case the time herein specified for Settlement will be extended for the period of time necessary for such action. However, if We cannot perfect title or are unable to perfect title after taking reasonable legal actions, We will promptly notify You in which event You will have the right, at Your option, to either (i) terminate this Agreement by sending Us written notice of Your decision within ten (10) days after Your receipt of Our notice, or (ii) You can waive any title defects and proceed to Settlement. At the time Settlement occurs, You will be deemed to have accepted title and We will be expressly released from all liability or damages by reason of any defect in or failure of title. If You terminate the Agreement for title defects, We will refund the Deposit to You once You execute Our Mutual Release Agreement.

(b) If easements are required after Settlement, You agree to cooperate with Us, for no additional consideration (monetary or otherwise) in executing and delivering any and all documents related to such easements.

(c) You are purchasing a completed home from Us and We are not acting as a contractor for You in the construction of the Home. You acquire no right, title or interest in the Property or the Home by virtue of this Agreement except the right and obligation to purchase the completed Home and Lot in accordance with the terms of this Agreement. Equitable title shall remain vested in Us until delivery of the deed at Settlement.

12. **Default.**
(a) **Default-Purchaser.** If You fail to make full and timely Settlement or if You otherwise breach any provision under this Agreement, the damages that We will or may suffer as a result of Your breach or default are uncertain and not reasonably calculable with certainty. Accordingly, We reserve the right to retain the Deposit as liquidated damages and not as a penalty, in which event You and We will be relieved from further liability hereunder. In the alternative, We may retain the Deposit for the payment of damages and pursue such legal and/or equitable remedies We may have on account of Your breach or default, including, but not limited to, specific performance. In the event You fail to take title to the Property on the Actual Settlement Date as required in this Agreement, We may, in Our sole discretion, agree to extend the time of Settlement. In the event You do not settle on the Actual Settlement Date, regardless of whether or not We agreed to extend the time of Settlement, You will be responsible for payment of a late settlement charge computed at the rate of 1% of the unpaid balance of the Purchase Price per month beginning on the originally scheduled

Settlement Date through the rescheduled Actual Settlement Date. No interest rate charged herein shall be in excess of that permitted by law. If there are multiple purchasers, each of You shall be jointly and severally liable hereunder. In the event that You are in breach or default under this Agreement, You will be responsible for all attorneys' fees We incur in enforcing this Agreement.

(b) **Default-Seller.** We will be deemed to be in default upon Our failure (1) to complete Settlement as required hereunder; or (2) to perform the obligations required to be performed by Us hereunder prior to Settlement, unless You are in default. In the event We default under this Agreement, You may, at your election, initiate an action for the recovery of damages to the extent permitted under Maryland law ("Actual Damages"). Alternatively, You may instead elect to recover Your Deposit (as defined in Paragraph 2 and to the extent previously paid to Us) plus interest on Your Deposit at the legal rate since the date of Our breach or default, plus the sum of One Thousand Dollars ($1,000.00) as liquidated damages and not a penalty (which sum is a reasonable estimate of actual damages which cannot be forecasted with certainty) ("Liquidated Damages"), in return for which You and We shall be automatically released from this Agreement and You would have no further rights to the Property. The right to elect to receive Liquidated Damages is an alternative remedy available to You and You may not elect to seek both Actual Damages and Liquidated Damages. TO THE MAXIMUM EXTENT ALLOWED BY APPLICABLE LAW, YOU EXPRESSLY WAIVE THE RIGHT TO SUE FOR SPECIFIC PERFORMANCE OF THIS AGREEMENT AS WELL AS ANY CLAIMED RIGHT TO ASSERT OR FILE A LIS PENDENS AGAINST THE PROPERTY AND FURTHER COVENANT NOT TO DO EITHER UNDER ANY CIRCUMSTANCES. You agree that the Liquidated Damages provision set forth above is sufficient consideration for Your waiver of the right to sue for specific performance. All of Your rights to sue Us for default or breach of this Agreement shall merge with the deed and Your sole and exclusive remedy for any post-Settlement default by Us under the portions of this Agreement that survive Settlement shall be limited to the lesser of (i) the cost to perform or (ii) the diminution in the Property value caused by any such default, and Our alleged default in performance shall be judged exclusively by the written performance standards defined in the Limited Warranty. You hereby waive and release all other remedies following Settlement.

**13. Claims and Disputes.** YOU AND WE AGREE THAT ANY AND ALL CLAIMS ARISING OUT OF OR RELATING TO THIS AGREEMENT, SETTLEMENT HEREUNDER, OR IMPROVEMENTS TO THE PROPERTY, REGARDLESS OF LEGAL THEORY, EXCEPT ANY CLAIMS UNDER THE LIMITED WARRANTY ("CLAIMS"), SHALL BE SUBJECT TO A ONE (1) YEAR LIMITATION OF ACTION PERIOD AND BAR DATE. SUCH CLAIMS BASED ON MATTERS OCCURRING BEFORE THE SETTLEMENT DATE SHALL BE DEEMED TO HAVE ARISEN AND ACCRUED, IF AT ALL, AND THE ONE YEAR LIMITATION OF ACTION PERIOD FOR ALL SUCH CLAIMS SHALL BEGIN TO RUN ON THE ACTUAL SETTLEMENT DATE. ALL APPLICATION OF THE SO-CALLED "DISCOVERY RULE" IS MUTUALLY WAIVED BY THE PARTIES. BY EXECUTING THIS AGREEMENT, YOU ACKNOWLEDGE YOUR UNDERSTANDING AND AGREEMENT TO THESE TERMS AND THAT THE SAID ONE (1) YEAR PERIOD IS COMPLETELY REASONABLE IN ALL RESPECTS. NOTWITHSTANDING THE FOREGOING, THESE BAR DATE TERMS SHALL NOT APPLY TO CLAIMS FOR INDEMNITY AND/OR CONTRIBUTION BY US AGAINST YOU AND/OR ANY OTHER PERSON. THESE RIGHTS MAY ONLY BE ENFORCED BY YOU AND US AND NOTHING HEREIN SHALL BE CONSTRUED TO CREATE ANY THIRD PARTY BENEFICIARY RIGHTS IN ANY OTHER PERSON OR ENTITY.

**14. Naturally Occurring Gases, Arsenic and Other Metals.** You agree that this Agreement is not conditioned upon testing results for naturally occurring gases, including radon, arsenic, or other elemental metals, or the presence or lack of such gases, arsenic or other elemental metals affecting the Property. Upon Settlement, You will be deemed to have accepted the Property as to the presence of these gases and/or arsenic and/or other elemental metals now or in the future and Seller shall be released from any and all claims related to or arising from the presence of any naturally occurring gases, arsenic or other elemental metals. Purchasers seeking further information should contact the U.S. Environmental Protection Agency or their state environmental protection office.

**15. Biological Impurities.** Modern building codes require that homes be constructed to slow the escape of warm air from the house during the cold months and cold air during the warmer months. These tight construction requirements could also cause certain invisible contaminants and irritants from escaping the Home. These could include animal dander, dust, dust mites, fungi, mold, bacteria and pollen, which we will call "Biological Impurities". These can be brought into the Home through the natural circulation of air, carried into the home by people, animals or things, including building materials and, once brought into the Home, have no way of escaping. Moisture in the Home, which can be caused by the level of air conditioning or heating and natural components used in the construction of Your Home, such as wood, can cause these Biological Impurities to grow. Homeowners can take measures to minimize Biological Impurities, which measures are more fully listed in the Limited Warranty provided to You at Settlement. We are not experts in identifying Biological Impurities or any possible effects which they can cause to You or Your family. Under the Limited Warranty, We are responsible for repairing or replacing any damage caused by a defect in materials or workmanship in the original construction (please read the Limited Warranty carefully as limitations and exclusions apply). We are not responsible for any Biological Impurities that are not caused by defects in the original construction of Your Home or which are caused or made worse through Your actions or inactions.

**16. Oral Statements or Promises.** Unless oral statements or promises are written into this Agreement, they are not enforceable under law. By including the terms below, You and We are making them part of this Agreement and agree to abide by these terms. THIS SECTION SHOULD NOT BE LEFT BLANK IF YOU ARE RELYING ON ANY ORAL STATEMENTS OR PROMISES. The following oral statements or promises have been made in conjunction with this Agreement and performance of each of these statements or promises is incorporated into each party's obligation to fully perform the terms of this Agreement: **NONE**

**17. Insulation.** The type, size and R value of insulation to be installed in your new Home shall be at least as shown on the chart below. R means resistance to heat flow; the higher the R value, the greater the insulation power.

| LOCATION | R-VALUE* | TYPE** |
|---|---|---|
| Slab W/O basement or slab on grade. Only. CZ 4, 5 & 6 | R-10 | 2" V Rigid Foam |

| Conditioned Crawl space | R-10 | 2" Rigid Foam |
|---|---|---|
| Un - Conditioned Crawl space | R-19 | 5½" Fiberglass Batt |
| Unfinished Foundation Walls to unconditioned space | R-11 (4ft from top of foundation wall) | 3½" Fiberglass Batt |
| Finished Foundation Walls to unconditioned space | R-13 | 3½" Fiberglass Batt |
| Exterior Walls | R-13 | 3½" Fiberglass Batt |
| Floors above unconditioned space to include over garages and overhangs. | R-30 | 10" Fiberglass Batt |
| Attics (flat) | R-30 | 10.25" Blown Fiberglass |
| Attics (cathedral) | R-30 | 9.5" Fiberglass Batt |

\* This is a minimum rating; the R-value may be higher if required by local jurisdictions. The R-value as constructed will be available prior to the Actual Settlement Date.
\*\* Thickness of fiberglass insulation provided is based on U.S. Greenfiber, LLC Cocoon2 Stabilized Cellulose Insulation. Thickness may vary from manufacturer to manufacturer; however the R value will remain the same.

**18. Community/School Information.** We include certain information in Our marketing, advertising, promotional and sales documents regarding the Community for informational purposes only and such information is given to the best of Our knowledge as of the date the information is given. We make no warranties as to the accuracy or timeliness of this information and You acknowledge that this information is subject to change, that You are not relying upon such information in entering into this Agreement and none of such information is a part of this Agreement. School district and boundary information may be obtained by contacting the appropriate County or City School Board.

**19. Successors and Assigns.** This Agreement shall be binding on the parties and their heirs, legal representatives and permitted assigns. You cannot assign this Agreement without Our prior written consent, which may be withheld at Our sole discretion.

**20. Risk of Loss.** We assume the risk of loss or damage to the Property by fire or other casualty until Settlement. If such loss or damage occurs, We may terminate this Agreement and refund the Deposit to You without further liability to You. In such event, You would have no right to or interest in fire or other casualty or hazard insurance proceeds.

**21. Time is of the Essence.** TIME IS OF THE ESSENCE FOR THIS AGREEMENT This means that the failure to do what is required within the timeframes specified in this Agreement or, if no timeframe is given, within a reasonable period, is a default under the Agreement.

**22. Picture Release.** You give Us full permission to use, publish, and copyright photographic prints and any other reproductions of the Property, or any part thereof, for advertising, publicity, and for any and all bona fide commercial purposes whatsoever.

**23. Sewer and Water Disclosure.**
☐ If this Paragraph is checked in the left margin, the Property is subject to deferred water and sewer charges for which You will, upon Settlement, become responsible. The estimated amount of such charges is $_____ per year and/or a flat fee of $_____.
☐ If this Paragraph is checked in the left margin, You acknowledge that You have been advised that the Property will be subject to annual deferred water and sewer charges, but that the appropriate water and sewer authority has not yet established a schedule of charges for the water and sewer projects that benefit the Property.
☐ If this Paragraph is checked in the left margin, You acknowledge that You have been advised the local jurisdiction has adopted a plan for a water and sewer project to benefit the Property in the future, and that the Property may become subject to deferred water and sewer charges for which You will be responsible.

**24.** If the Property is subject to deferred water and sewer charges as indicated above, You acknowledge that the developer of the community established private water and sewer utility(ies) ("Utilities") and the foregoing deferred private water and sewer assessments ("W&S Assessments"). You also acknowledge and agree that We (i) did not establish the W&S Assessments, (ii) have no ownership interest in, or connection or affiliation with and no control over the Utilities that established the W&S Assessments, (iii) receive no money from the Utilities and (iv) derive no benefit whatsoever from the W&S Assessments. You covenant not to sue Us for, and hereby waive and release Us from, any and all claims, liability and damages arising from or relating to the W&S Assessments, **including** but not limited to any claims concerning the number of years the W&S Assessments are being charged.

**25. Notice of Zones of Dewatering Influence.** A purchaser of real property in Baltimore County, Carroll County, Frederick County, or Washington County is advised to contact the Maryland Department of the Environment to determine whether the real property for purchase is located within a zone of dewatering influence. Maryland law provides certain remedies for property impacted by dewatering.

**26. Consumer Information Pamphlet. (The following does not apply to sales in Montgomery County, Maryland) WE HAVE PROVIDED YOU WITH A COPY OF THE CONSUMER INFORMATION PAMPHLET AS REQUIRED UNDER MARYLAND LAW AND YOU ACKNOWLEDGE RECEIPT OF SUCH CONSUMER INFORMATION PAMPHLET.**

_____          5/4/2023
—— DocuSigned by:

_____          _____
Acknowledgment of Purchaser              Date

_____          _____
Acknowledgment of Purchaser              Date

**27. Miscellaneous.** All notices and communications under this Agreement shall be in writing, except as otherwise provided herein, and shall be deemed duly given on the date such notice is (i) mailed by U.S. postal service regular mail or certified mail, first class postage prepaid, (ii) delivered to an overnight courier for next day delivery, (iii) sent by facsimile or electronic mail with transmission verification, or (iv) delivered by personal delivery. All communication to Seller shall be sent to the applicable Division office, and if to You to the address provided on the first page of this Agreement. The parties shall be responsible for notifying each other of any change of address. This Agreement (including any notices thereof) shall not be recorded. The invalidity of any provision of this Agreement shall not affect the validity or enforceability of any other provision set forth herein. Where the context requires, words in the singular shall be substituted for the plural and vice versa, and words in the masculine shall be substituted by any gender. This Agreement, its formation and enforceability shall be governed by the laws of the State of Maryland without regard for conflicts of law principles. Any rules of interpretation wherein this Agreement is construed against its drafter are waived.

**28. Entire Agreement.** This Agreement, together with the Maryland Addendum to Purchase Agreement, the Affiliated Business Arrangement Disclosure, and all other addenda pertaining thereto are incorporated by reference and constitute the entire and final Agreement. No other prior or contemporaneous agreements, representations, promises or terms (written or oral) are part of this Agreement, but are superseded by this written Agreement. No additions or changes to this Agreement shall be valid or binding unless signed by You and Our authorized officer.

**29. Sales and Marketing Representative Acknowledgment; Broker Commission. The Sales Representative works for Us, which means that he or she may assist You in purchasing the property, but his or her duty of loyalty is only to Us.** Additionally, You warrant to Us that this sale was brought about solely by Our sales personnel and that no outside broker or salesperson was the procuring cause of this sale, unless the box below is checked.

If either box below is checked, You have engaged the services of a realtor and broker. You agree to hold Us harmless and to defend Us against any claim for compensation of any kind made by any realtor or broker in connection with this Agreement except for the realtor and broker identified below. We agree to pay Broker a commission in the amount of either:

☐ **Flat Dollar Amount** of $_____; or

☐ _____% of _____ of $_____

The commission is payable upon disbursement of funds at Settlement. Any commission due to Broker shall not be deemed earned until Settlement and We will pay the commission to the Broker from the Settlement proceeds.

Broker Name and Address: _____
_____, _____, _____
Realtor Name and Address: _____, _____
_____, _____, _____

**30. NOTICE TO PURCHASER CONCERNING THE CHESAPEAKE AND ATLANTIC COASTAL BAYS CRITICAL AREA. YOU ARE ADVISED THAT ALL OR A PORTION OF THE PROPERTY MAY BE LOCATED IN THE "CRITICAL AREA" OF THE CHESAPEAKE AND ATLANTIC COASTAL BAYS, AND THAT ADDITIONAL ZONING, LAND USE, AND RESOURCE PROTECTION REGULATIONS APPLY IN THIS AREA. THE "CRITICAL AREA" GENERALLY CONSISTS OF ALL LAND AND WATER AREAS WITHIN 1,000 FEET BEYOND THE LANDWARD BOUNDARIES OF STATE OR PRIVATE WETLANDS, THE CHESAPEAKE BAY, THE ATLANTIC COASTAL BAYS, AND ALL OF THEIR TIDAL TRIBUTARIES. THE "CRITICAL AREA" ALSO INCLUDES THE WATERS OF AND LANDS UNDER THE CHESAPEAKE BAY, THE ATLANTIC COASTAL BAYS, AND ALL OF THEIR TIDAL TRIBUTARIES TO THE HEAD OF THE TIDE. FOR INFORMATION AS TO WHETHER THE PROPERTY IS LOCATED WITHIN THE CRITICAL AREA, YOU MAY CONTACT THE LOCAL DEPARTMENT OF PLANNING AND ZONING, WHICH MAINTAINS MAPS SHOWING THE EXTENT OF THE CRITICAL AREA IN THE JURISDICTION. ALLEGANY, CARROLL, FREDERICK, GARRETT, HOWARD, MONTGOMERY, AND WASHINGTON COUNTIES DO NOT INCLUDE LAND LOCATED IN THE CRITICAL AREA.**

**31. Military Operations and Testing.** (THE FOLLOWING DISCLOSURE DOES NOT APPLY IN ALLEGANY, CARROLL, FREDERICK, GARRETT, HOWARD, MONTGOMERY AND WASHINGTON COUNTIES):

YOU ARE ADVISED THAT THE PROPERTY MAY BE LOCATED NEAR A MILITARY INSTALLATION THAT CONDUCTS FLIGHT OPERATIONS, MUNITIONS TESTING, OR MILITARY OPERATIONS THAT MAY RESULT IN HIGH NOISE LEVELS.

**32. Merger.** Except as specifically provided in this Agreement, all of Your rights and remedies under the Agreement shall merge with (and shall be completely extinguished and superseded by) the deed delivered to You at Settlement. The sole and only exceptions to that intended and agreed merger are those rights and remedies (if any) which are expressly defined in (a) the deed, and (b) the Limited Warranty to be issued to You at Settlement. You hereby voluntarily and expressly waive and release all contrary claims and entitlements. You agree to execute any documentation reasonably required at Settlement to further memorialize the intent of the parties stated in this Paragraph 30 and that Your rights and remedies post-Settlement shall be limited to items (a) and (b) herein. Unless otherwise expressly stated in the Agreement, all of Your obligations under the Agreement and all of Our rights and remedies under the Agreement, including but not limited to, Paragraphs 1, 6, 8(c)-(e) & (h), 9, 10, 11(b), 12(b), 13, 22 - 25, 27 - 30 as well as all Addenda, shall survive and shall not be merged into the deed delivered at Settlement.

**33.** THIS IS A LEGALLY BINDING CONTRACT. READ AND UNDERSTAND ALL PROVISIONS PRIOR TO SIGNING. IF YOU DO NOT UNDERSTAND, SEEK LEGAL OR OTHER COMPETENT ADVICE. IF YOU SIGN BELOW, IT SHALL BE CONCLUSIVELY PRESUMED THAT YOU HAVE FULLY READ AND UNDERSTOOD ALL OF THE TERMS OF THIS AGREEMENT. YOU ACKNOWLEDGE THAT THIS AGREEMENT, AS SIGNED BY YOU ALONE, CONSTITUTES AN OFFER TO PURCHASE AND THAT THIS AGREEMENT SHALL NOT BE BINDING UPON US UNTIL EXECUTED BY ONE OF OUR VICE PRESIDENTS. THE SALESPERSON OR REPRESENTATIVE RECOMMENDING APPROVAL IS NOT SUCH A VICE PRESIDENT. YOUR OFFER SHALL BE REVOCABLE ONLY BY WRITTEN NOTICE OF REVOCATION GIVEN TO

AND RECEIVED BY OUR APPLICABLE VICE PRESIDENT PRIOR TO OUR ACCEPTANCE.  WE ARE NOT REQUIRED TO PROVIDE NOTICE OF OUR ACCEPTANCE TO YOU AND ACCEPTANCE OCCURS UPON SIGNATURE BY OUR VICE PRESIDENT.

PURCHASER:

Date: 5/4/2023

Date: _____

SELLER:

NVR, INC. t/a__**Ryan Homes**___

Date: 5/8/2023

By: _____
      Vice President

Lot ___0055___ Building _____
Bayside
Property Address 12397 HIDDEN BAY DRIVE BERLIN,MD 21811

Community _____ The Landings at

# MARYLAND ADDENDUM TO PURCHASE AGREEMENT

Addendum made this __4__ day of _____ May _____, 20 __23__ to a Purchase Agreement by and between NVR, Inc. t/a Ryan Homes

("Seller", "Us", "Our" or "We") and _____ Robert Smith _____ and _____ (individually and collectively "Purchaser" or

"You") dated __05/04/23__ (the "Agreement").

Below are a series of addenda which, if checked in the left margin by Seller, are made a part of the Agreement as of the date below.

☐ FIRST-TIME HOMEBUYER – PAYMENT OF TRANSFER TAX ADDENDUM

Pursuant to the Annotated Code of Maryland, Real Property Article, Section 14-104, We are required to pay the State Transfer Tax for qualifying first-time homebuyers. To qualify as a first-time homebuyer under Section 14-104, You must be an individual who has never owned residential real property in the State of Maryland as a principal residence and You will be occupying the Property as Your principal residence. If there are two (2) or more Purchasers, each Purchaser must be either (i) an individual who has never owned residential real property in the State of Maryland as a principal residence or, (ii) a co-maker or guarantor of a purchase money mortgage or deed of trust on the Property and the co-maker or guarantor will not occupy the Property as their principal residence.

You hereby represent that You qualify under Section 14-104 as a first time homebuyer and We will pay the State Transfer Taxes. The representation You have made above will be verified during the mortgage approval process and if the representation made is false, You will pay all State transfer tax. In the event We are paying a Cash Discount or are otherwise paying any portion of the Closing Costs, our payment of the State Transfer Taxes shall be included in such payment.

☒ MARYLAND HOMEOWNER'S ASSOCIATION ACT ADDENDUM

THIS SALE IS SUBJECT TO THE REQUIREMENTS OF THE MARYLAND HOMEOWNERS ASSOCIATION ACT (THE "ACT"). THE ACT REQUIRES THAT THE SELLER DISCLOSE TO YOU AT OR BEFORE THE TIME THE CONTRACT IS ENTERED INTO, OR WITHIN 7 CALENDAR DAYS OF ENTERING INTO THE CONTRACT, CERTAIN INFORMATION CONCERNING THE DEVELOPMENT IN WHICH THE PROPERTY YOU ARE PURCHASING IS LOCATED. THE CONTENT OF THE INFORMATION TO BE DISCLOSED IS SET FORTH IN § 11B-105 (b) OF THE ACT (THE "MHAA INFORMATION") AS FOLLOWS:
    (1)    (i)    THE NAME, PRINCIPAL ADDRESS, AND TELEPHONE NUMBER OF THE SELLER AND OF THE DECLARANT, IF THE DECLARANT IS NOT THE SELLER; OR
        (ii)    IF THE SELLER IS A CORPORATION OR PARTNERSHIP, THE NAMES AND ADDRESSES OF THE PRINCIPAL OFFICERS OF THE CORPORATION, OR GENERAL PARTNERS OF THE PARTNERSHIP;
    (2)    (i)    THE NAME, IF ANY, OF THE HOMEOWNERS ASSOCIATION; AND
        (ii)    IF INCORPORATED, THE STATE IN WHICH THE HOMEOWNERS ASSOCIATION IS INCORPORATED AND THE NAME OF THE MARYLAND RESIDENT AGENT;
    (3)    A DESCRIPTION OF:
        (i)    THE LOCATION AND SIZE OF THE DEVELOPMENT, INCLUDING THE MINIMUM AND MAXIMUM NUMBER OF UNITS CURRENTLY PLANNED OR PERMITTED, IF APPLICABLE, WHICH MAY BE CONTAINED WITHIN THE DEVELOPMENT; AND
        (ii)    ANY PROPERTY OWNED BY THE DECLARANT OR THE SELLER CONTIGUOUS TO THE DEVELOPMENT WHICH IS TO BE DEDICATED TO PUBLIC USE;
    (4)    IF THE DEVELOPMENT IS OR WILL BE WITHIN OR A PART OF ANOTHER DEVELOPMENT, A GENERAL DESCRIPTION OF THE OTHER DEVELOPMENT;
    (5)    IF THE DECLARANT HAS RESERVED IN THE DECLARATION THE RIGHT TO ANNEX ADDITIONAL PROPERTY TO THE DEVELOPMENT, A DESCRIPTION OF THE SIZE AND LOCATION OF THE ADDITIONAL PROPERTY AND THE APPROXIMATE NUMBER OF UNITS CURRENTLY PLANNED TO BE CONTAINED IN THE DEVELOPMENT, AS WELL AS ANY TIME LIMITS WITHIN WHICH THE DECLARANT MAY ANNEX SUCH PROPERTY;
    (6)    A COPY OF:
        (i)    THE ARTICLES OF INCORPORATION, THE DECLARATION, AND ALL RECORDED COVENANTS AND RESTRICTIONS OF THE PRIMARY DEVELOPMENT AND OF OTHER RELATED DEVELOPMENTS TO THE EXTENT REASONABLY AVAILABLE, TO WHICH THE PURCHASER SHALL BECOME OBLIGATED ON BECOMING AN OWNER OF THE PROPERTY, INCLUDING A STATEMENT THAT THESE OBLIGATIONS ARE ENFORCEABLE AGAINST AN OWNER AND THE OWNER'S TENANTS, IF APPLICABLE; AND
        (ii)    THE BYLAWS AND RULES OF THE PRIMARY DEVELOPMENT AND OF OTHER RELATED DEVELOPMENTS TO THE EXTENT REASONABLY AVAILABLE, TO WHICH THE PURCHASER SHALL BECOME OBLIGATED ON BECOMING AN OWNER OF THE PROPERTY, INCLUDING A STATEMENT THAT THESE OBLIGATIONS ARE ENFORCEABLE AGAINST AN OWNER AND THE OWNER'S TENANTS, IF APPLICABLE;
    (7)    A DESCRIPTION OR STATEMENT OF ANY PROPERTY WHICH IS CURRENTLY PLANNED TO BE OWNED, LEASED, OR MAINTAINED BY THE HOMEOWNERS ASSOCIATION;
    (8)    A COPY OF THE ESTIMATED PROPOSED OR ACTUAL ANNUAL BUDGET FOR THE HOMEOWNERS ASSOCIATION FOR THE CURRENT FISCAL YEAR, INCLUDING A DESCRIPTION OF THE REPLACEMENT RESERVES FOR COMMON AREA IMPROVEMENTS, IF ANY, AND A COPY OF THE CURRENT PROJECTED BUDGET FOR THE HOMEOWNERS ASSOCIATION BASED UPON THE DEVELOPMENT FULLY EXPANDED IN ACCORDANCE WITH EXPANSION RIGHTS CONTAINED IN THE DECLARATION;
    (9)    A STATEMENT OF CURRENT OR ANTICIPATED MANDATORY FEES OR ASSESSMENTS TO BE PAID BY OWNERS OF UNITS WITHIN THE DEVELOPMENT FOR THE USE, MAINTENANCE, AND OPERATION OF COMMON AREAS AND FOR OTHER PURPOSES RELATED TO THE HOMEOWNERS ASSOCIATION AND WHETHER THE DECLARANT OR SELLER WILL BE OBLIGATED TO PAY THE FEES IN WHOLE OR IN PART;

(10)  (i)  A BRIEF DESCRIPTION OF ZONING AND OTHER LAND USE REQUIREMENTS AFFECTING THE DEVELOPMENT; OR

      (ii)  A WRITTEN DISCLOSURE OF WHERE THE INFORMATION IS AVAILABLE FOR INSPECTION;

(11)  A STATEMENT REGARDING:

      (i)  WHEN MANDATORY HOMEOWNERS ASSOCIATION FEES OR ASSESSMENTS WILL FIRST BE LEVIED AGAINST OWNERS OF UNITS;

      (ii)  THE PROCEDURE FOR INCREASING OR DECREASING SUCH FEES OR ASSESSMENTS;

      (iii)  HOW FEES OR ASSESSMENTS AND DELINQUENT CHARGES WILL BE COLLECTED;

      (iv)  WHETHER UNPAID FEES OR ASSESSMENTS ARE A PERSONAL OBLIGATION OF OWNERS OF UNITS;

      (v)  WHETHER UNPAID FEES OR ASSESSMENTS BEAR INTEREST AND IF SO, THE RATE OF INTEREST;

      (vi)  WHETHER UNPAID FEES OR ASSESSMENTS MAY BE ENFORCED BY IMPOSING A LIEN ON A HOME UNDER THE TERMS OF THE MARYLAND CONTRACT LIEN ACT; AND

      (vii)  WHETHER HOME OWNERS WILL BE ASSESSED LATE CHARGES OR ATTORNEYS' FEES FOR COLLECTING UNPAID FEES OR ASSESSMENTS AND ANY OTHER CONSEQUENCES FOR THE NONPAYMENT OF THE FEES OR ASSESSMENTS;

(12)  IF ANY SUMS OF MONEY ARE TO BE COLLECTED AT SETTLEMENT FOR CONTRIBUTION TO THE HOMEOWNERS ASSOCIATION OTHER THAN PRORATED FEES OR ASSESSMENTS, A STATEMENT OF THE AMOUNT TO BE COLLECTED AND THE INTENDED USE OF SUCH FUNDS; AND

(13)  A DESCRIPTION OF SPECIAL RIGHTS OR EXEMPTIONS RESERVED BY OR FOR THE BENEFIT OF THE DECLARANT OR THE SELLER, INCLUDING:

      (i)  THE RIGHT TO CONDUCT CONSTRUCTION ACTIVITIES WITHIN THE DEVELOPMENT;

      (ii)  THE RIGHT TO PAY A REDUCED HOMEOWNERS ASSOCIATION FEE OR ASSESSMENT; AND

      (iii)  EXEMPTIONS FROM USE RESTRICTIONS OR ARCHITECTURAL CONTROL PROVISIONS CONTAINED IN THE DECLARATION OR PROVISIONS BY WHICH THE DECLARANT OR THE SELLER INTENDS TO MAINTAIN CONTROL OVER THE HOMEOWNERS ASSOCIATION.

IF YOU HAVE NOT RECEIVED ALL OF THE MHAA INFORMATION 5 CALENDAR DAYS OR MORE BEFORE ENTERING INTO THE CONTRACT, YOU HAVE 5 CALENDAR DAYS TO CANCEL THIS CONTRACT AFTER RECEIVING ALL THE MHAA INFORMATION. YOU MUST CANCEL THE CONTRACT IN WRITING, BUT YOU DO NOT HAVE TO STATE A REASON. THE SELLER MUST ALSO PROVIDE YOU WITH NOTICE OF ANY CHANGES IN MANDATORY FEES EXCEEDING 10% OF THE AMOUNT PREVIOUSLY STATED TO EXIST AND COPIES OF ANY OTHER SUBSTANTIAL AND MATERIAL AMENDMENT TO THE INFORMATION PROVIDED TO YOU. YOU HAVE 3 CALENDAR DAYS TO CANCEL THIS CONTRACT AFTER RECEIVING NOTICE OF ANY CHANGES IN MANDATORY FEES, OR COPIES OF ANY OTHER SUBSTANTIAL AND MATERIAL AMENDMENT TO THE MHAA INFORMATION WHICH ADVERSELY AFFECTS YOU. IF YOU DO CANCEL THE CONTRACT YOU WILL BE ENTITLED TO A REFUND OF ANY DEPOSIT YOU MADE ON ACCOUNT OF THE CONTRACT. HOWEVER, UNLESS YOU RETURN THE MHAA INFORMATION TO THE SELLER WHEN YOU CANCEL THE CONTRACT, THE SELLER MAY KEEP OUT OF YOUR DEPOSIT THE COST OF REPRODUCING THE MHAA INFORMATION, OR $100, WHICHEVER AMOUNT IS LESS.

BY PURCHASING A HOME WITHIN THIS DEVELOPMENT, YOU WILL AUTOMATICALLY BE SUBJECT TO VARIOUS RIGHTS, RESPONSIBILITIES, AND OBLIGATIONS, INCLUDING THE OBLIGATION TO PAY CERTAIN ASSESSMENTS TO THE HOMEOWNERS ASSOCIATION WITHIN THE DEVELOPMENT. THE PROPERTY YOU ARE PURCHASING MAY HAVE RESTRICTIONS ON:

    (1)  ARCHITECTURAL CHANGES, DESIGN, COLOR, LANDSCAPING, OR APPEARANCE;

    (2)  OCCUPANCY DENSITY;

    (3)  KIND, NUMBER, OR USE OF VEHICLES;

    (4)  RENTING, LEASING, MORTGAGING, OR CONVEYING PROPERTY;

    (5)  COMMERCIAL ACTIVITY; OR

    (6)  OTHER MATTERS.

YOU SHOULD REVIEW THE MHAA INFORMATION CAREFULLY TO ASCERTAIN YOUR RIGHTS, RESPONSIBILITIES, AND OBLIGATIONS WITHIN THE DEVELOPMENT.

☒ NEW HOME WARRANTY SECURITY PLAN

Maryland law requires a builder who does not participate in a New Home Warranty Security Plan to make the following disclosure as part of the contract for sale or construction of a new home.

Builders of new homes in the State of Maryland are required to be registered with the Consumer Protection Division of the Office of the Attorney General unless they build new homes exclusively in Montgomery County. In that case, they are required to register with the Montgomery County Office of Consumer Affairs.

We do not participate in a New Home Warranty Security Plan. Therefore, You may be afforded only certain limited implied warranties as are provided by law.

Maryland law requires Us to either disclose any actual knowledge that We have of any hazardous or regulated materials which are present on the site of the new home or to state that We are making no representations or warranties as to whether any hazardous or regulated materials are present on the site of the new home.

DocuSign Envelope ID: DFF2F5A4-1830-4F42-B8F9-7E89A1EAB3D5

We have actual knowledge that the following hazardous or regulated materials are present on the site of the new home.

☐ Asbestos             ☐ Lead-based Paint           ☐ Radon

☐ Methane              ☐ Underground Storage Tanks

☐ Licensed Landfills   ☐ Unlicensed Landfills

☐ Licensed Rubble Fills   ☐ Unlicensed Rubble Fills

Other hazardous or regulated materials and other environmental hazards present on the site:

_____

_____

Or

☐ We have no actual knowledge of any hazardous or regulated material present on the site of the new home.

Or

☒ We are making no representations or warranties as to whether there is any hazardous or regulated material on the site of the new home.

You have the right to change Your mind and to rescind this Agreement. If You decide to discontinue this Agreement, You must notify the builder in writing within 5 working days from the date You sign the Agreement. Upon rescission, You are entitled to a refund of any monies paid to Us for the new home.

You acknowledge that We do not participate in a New Home Warranty Security Plan and that You have read and understand the above disclosure.

## ☐COMMON DRIVEWAY ADDENDUM

The Property subject to the Agreement is located on a pipe-stem lot and requires a common driveway. This will require the establishment of an easement over this Lot and adjacent lots for the construction and maintenance of a common driveway to be shared by the owners of the affected lots. The easement will provide that the owners of the lots share equally in the care and maintenance of the driveway and that none of the owners may restrict the use of the driveway by the other owners. This easement may not be established prior to Settlement and You agree to execute any documents necessary for the establishment and recordation of such an easement at any time after Settlement.

## ☐MODEL HOME PURCHASE ADDENDUM

The Property shall, upon Settlement, be leased to the Seller for use as a model home pursuant to the terms of the Lease Agreement attached hereto. In addition, You shall not have the right to select any options, nor shall change orders be allowed, except as may be permitted by Us on a limited basis. All references in the Purchase Agreement to the Change Order Policy are hereby deleted since no changes to the model home selections are permitted.

## ☐PLAT RECORDATION ADDENDUM

The plat of subdivision which creates the Lot subject to this Agreement has not been recorded among the land records of the applicable County as of the date of this Agreement. This Agreement is expressly contingent upon the recordation of the plat of subdivision. If the plat of subdivision is not recorded within six (6) months after the date of this Agreement, We have the following options:

a) We may terminate this Agreement and return the Deposit to You upon Your execution of a Mutual Release Agreement; or

b) We may extend this contingency for an additional period, up to the 2-year limitation provided in Paragraph 8(a) of the Agreement. If the plat is still not recorded after the extension, any additional extensions beyond the 2-year period may only be given with Your consent. If You do not consent to further extensions, We will return Your Deposit upon Your execution of a Mutual Release Agreement.

Prior to recordation, We reserve the right to change the dimensions, boundary lines, shape or size of the Lot. In the event the Lot size is reduced from the initial plan signed by You by fifteen percent (15%) or more as a result of any changes to the Plat, We will notify in writing within ten (10) days of the date the Plat is recorded and You, at Your option, may terminate this Agreement by providing written notice to Us within five (5) days after receipt of said notice. If You elect to terminate this Agreement, We will refund Your Deposit upon Your execution of a Mutual Release Agreement. This Addendum shall not survive Settlement.

DocuSign Envelope ID: DFF3FD9A-4B32-4B52-B8F0-7E889A1EA89D

## ☐ CONSERVATION EASEMENT ADDENDUM

If the Property is encumbered by a "conservation easement" as defined by Section 10-705(a)(2) of the Real Property Article of the Annotated Code of Maryland, then You acknowledge the following notice: This property is encumbered by one or more conservation easements or other restrictions limiting or affecting uses of the property. Maryland law requires that the vendor deliver to the purchaser copies of all conservation easements on or before the day the contract is entered into. The purchaser should review all conservation easements carefully to ascertain the purchaser's rights, responsibilities, and obligations under each conservation easement, including any requirement that after the sale the purchaser must inform the owner of the conservation easement of the sale of the property.

## ☐ WELL WATER ADDENDUM

The Property will be served by a private well water system. We will obtain all necessary approvals and permits for the construction of the water well. We will provide a water well which meets all applicable standards required by the city or county in which the Property is located. The water well shall be covered by Our Limited Warranty. Our Limited Warranty does not cover issues related to water yield or water quality subsequent to Settlement.

## ☐ SEPTIC ADDENDUM

The Property will be served by a private septic system. We will obtain all necessary approvals and permits for the construction of the septic system. We will provide a septic system which meets all applicable standards required by the city or county in which the Property is located. We will not be responsible for failure of the septic system occurring after Settlement, other than as specifically provided in Our Limited Warranty. You acknowledge that the size of the percolation field serving the septic system is designed and approved only for the number of bedrooms originally constructed in the home and that the number of bedrooms in the home may not be increased without significant modifications to the septic system by You.

## ☐ WETLANDS ADDENDUM

You acknowledge that the Property contains wetlands which are required to be left in their natural state. If all or a portion of the Property being purchased is wetlands, the approval of the U.S. Army Corps of Engineers will be necessary before a building permit can be issued for the Property. Additionally, the future use of existing dwellings may be restricted due to wetlands. The Corps has adopted a broad definition of wetlands, which encompasses a large portion of the Chesapeake Bay Region. Other portions of the State may also be considered wetlands. For information as to whether the Property includes wetlands, You may contact the Baltimore District of the U.S. Army Corps of Engineers. You may also elect, at Your expense, to engage the services of a qualified specialist to inspect the Property for the presence of wetlands prior to submitting a written offer to purchase the Property, or You may include in Your written offer, subject to the Our acceptance, a clause making Your purchase of the Property contingent upon a satisfactory wetlands inspection.

## ☐ CASH ADDENDUM

You have elected not to obtain a mortgage loan for the purchase of the Property and You will pay the Purchase Price, in accordance with Paragraph 4 of the Agreement, in cash or other immediately available funds. You may be required, at any time, to provide proof of available funds acceptable to Us in Our sole discretion. We have agreed  to provide You with a discount against cash due at Settlement, including financing and other Closing Costs as permitted by applicable law ("Cash Discount") in the amount of  $ . Payment of the Cash Discount  is not conditioned upon the use of a mortgage lender. The amount of the Cash Discount shown above shall not exceed the actual amount of Closing Costs required to be paid by Purchaser at Settlement. It is the intent of this provision that there shall be no cash payment to Purchaser at Settlement. The Cash Discount shall be reduced by an amount equal to any Closing Costs that are required by State law or regulation to be paid by Seller

If You change financing to include a mortgage loan, this Cash Addendum shall be null and void.

## ☐ CLOSING COSTS ADDENDUM

At Your request, We have agreed to increase the Purchase Price by $_____ (the "Additional Assistance") so that You can finance all/or part of Your Closing Costs. The Additional Assistance will be utilized at Settlement solely for payment of Closing Costs as defined in the Agreement The Purchase Price is thereby increased from $_____ to $_____ .

The payment and financing of Closing Costs  pursuant to this Addendum is not contingent upon the use of NVR Mortgage Finance, Inc. or any other affiliate of the Seller.

The increase in the Purchase Price pursuant to this Addendum above is expressly conditioned upon the appraised value of the Property being at or above the Purchase Price (as defined in the Agreement), if applicable  In the event the appraised value of the Property is less than the Purchase Price, this Addendum shall be null and void and Purchaser shall be required to pay the Closing Costs from Purchaser's funds.

You acknowledge that not all lenders allow the Purchase Price to be increased for financed Closing Costs, and consequently any requested mortgage financing may be declined. The interest rate on the Purchaser's mortgage loan may be higher than it would otherwise be if Closing Costs were not being financed at Purchaser's request and Purchaser will have higher monthly payments, a larger mortgage and will pay more interest and finance charges over the life of the mortgage loan. Additionally, this increase in the Purchase Price could result in higher real estate taxes or assessments on the Property. Purchaser further acknowledges that the Closing Costs being added to the Purchase Price will increase the mortgage loan amount, may result in a higher annual percentage rate on the mortgage loan, may require a higher amount of hazard insurance, private mortgage insurance or  any other type of insurance obtained in connection with the purchase and financing of the Property and may increase the Purchaser's Closing Costs.

DocuSign Envelope ID: DFF2F5A4-1830-4F42-BBF9-7E89A1EAB3D5

☒ ACKNOWLEDGEMENT OF ENERGY EFFICIENT OPTIONS

Purchaser acknowledges that Seller has provided written information about energy-efficient options, including a statement that tax credits may be available related to energy-efficient options, that are available for installation in the home before construction of the home is completed. Notwithstanding any of the foregoing, this provision applies only if the Community in which the Property is located contains eleven (11) or more new homes to be built by Seller.

This Addendum, upon execution by both parties, is herewith made an integral part of the aforementioned Agreement.

☒ HOMESTEAD PROPERTY TAX

If you plan to live in this home as your principal residence, you may qualify for the homestead property tax credit. The homestead property tax credit may significantly reduce the amount of property taxes you owe. As required under Section 9-105(F)(5) of the Tax Property Article of the Maryland Code, for more information, go to the following website for the Maryland State Department of Assessments and Taxation: https://dat.maryland.gov/realproperty/pages/maryland-homestead-tax-credit.aspx, and find the homestead application at https://dat.maryland.gov/SDAT%20Forms/2020Homestead_application.pdf "

☐ WET BAR USAGE. If the box in the left margin is checked, Purchaser selected a wet bar to be installed in the Property. Purchaser agrees that the wet bar and/or the wet bar area will not be used as a kitchen.

☒ OPTION TO INCLUDE ELECTRIC VEHICLE CHARGING STATION. Seller is required to provide Purchaser with notice that if the construction of one or more new housing units will include at least one garage, carport, or driveway for each housing unit, the builder or the builder's agent shall provide each buyer or prospective buyer with the option to include in or on the garage, carport, or driveway: (1) an electric vehicle charging station capable of providing at least Level 2 charging; or (2) a dedicated electric line of sufficient voltage to support the later addition of an electric vehicle charging station capable of providing at least Level 2 charging. Further, Seller shall give to each buyer or prospective buyer notice of the options listed in the prior sentence, and specific information about any available rebate programs related to the purchase or installation of electric vehicle charging stations. Purchaser should contact Seller's sales representative regarding such rebate programs.

☒ REAL ESTATE BROKER GUARANTY FUND NOTICE. Purchaser is protected by the Real Estate Guaranty Fund of the Maryland Real Estate Commission for losses covered by The Annotated Code of Maryland, Business Occupations and Professions Article, Section 17-401, et seq., in an amount not exceeding fifty thousand dollars ($50,000.00).

Except as specifically provided above, all terms and conditions of the Agreement remain in full force and effect.

|  |  | PURCHASER: | *Robert Smith* |
|---|---|---|---|
| Date: | 5/4/2023 | | |
| Date: | | | |
| | | SELLER: | |
| | | NVR, INC. t/a **Ryan Homes** | |
| | | | *Michael Ciabattoni* |
| Date: | 5/8/2023 | By: | |
| | | | Vice President |

DocuSign Envelope ID: DFF2F3A4-1880-4F42-BBF9-7E89A1EAB3D5

## AFFILIATED BUSINESS ARRANGEMENT DISCLOSURE

To: _____ **Robert Smith** _____ / _____ ("Purchaser" or "You")
From: NVR, Inc., t/a _____ **Ryan Homes** _____ ("Seller", "Us" or "We")
Lot **00000055** Block/Section _____ / _____ Community _____ **The Landings at Bayside**

In connection with the purchase of the Property listed above, You may need a mortgage loan and closing services. We recommend NVR Mortgage Finance, Inc. ("NVRM") for mortgage lending services and NVR Settlement Services, Inc. ("NVRSS") for closing services. NVRM and NVRSS provide efficient and professional services at competitive rates. Please be advised that We have a business relationship with NVRM and NVRSS. Specifically, NVRM is a wholly-owned subsidiary of NVR, Inc. and NVRSS is a wholly owned subsidiary of NVRM. Because of this relationship, this referral may provide Us with a financial or other benefit.

Set forth below is the estimated charge or range of charges for the services listed. You are NOT required to use the listed provider(s) as a condition for the purchase of the Property. THERE ARE FREQUENTLY OTHER SETTLEMENT SERVICE PROVIDERS AVAILABLE WITH SIMILAR SERVICES. YOU ARE FREE TO SHOP AROUND TO DETERMINE THAT YOU ARE RECEIVING THE BEST SERVICES AND THE BEST RATE FOR THESE SERVICES.

NVR MORTGAGE CHARGES:

| | | |
|---|---|---|
| 1. | Loan origination fee(s) | 1% to 3% |
| 2. | Credit report | $25.00 to $100.00 |
| 3. | Appraisal | $400.00 to $1,000.00 |

NVRSS CHARGES:

| | | |
|---|---|---|
| 1. | Title exam fee | $0.00 to $500.00 |
| 2. | Settlement or closing fee | $65.00 to $1,500.00 |
| 3. | Lender's title insurance premium | $325.00 to $5,000.00 |
| 4. | Owner's title insurance premium | $350.00 to $6,000.00 |
| 5. | Title Insurance Binder Fee | $25.00 to $200.00 |

## ACKNOWLEDGEMENT

I/We have read this disclosure, and understand that Seller is referring Us to purchase the above-described settlement services and Seller may receive a financial or other benefit as the result of this referral.

5/4/2023

_____
Date

_____
Purchaser
Robert Smith
C30E4C2E57B3AC0

_____
Date

_____
Purchaser

Lot __0055__ Block _____                                    Community **The Landings at Bayside**

# WORCESTER COUNTY
## ADDENDUM TO PURCHASE AGREEMENT

Addendum made this __4__ day of _____**May**_____, 20__23__ to a Purchase Agreement by and between NVR, Inc.

t/a _____**Ryan Homes**_____ ("Seller") and _____**Robert  Smith**_____ and _____

collectively, "Purchaser"), dated __05/04/23__ (the "Agreement").

RIGHT TO FARM.  This Notice is a disclosure of the existence of the Worcester County Right to Farm Law in compliance with Worcester County Right to Farm Law (Section ZS1-347 of the Worcester County Code) to promote understanding between agricultural and forestry operations and their residential neighbors concerning the normal inconveniences of such operations.

Worcester County allows agricultural operations within the county.  You may be subject to inconveniences or discomforts arising from such operations, including but not limited to odors, dust, spraying of pesticides including aerial spraying from low flying aircraft, manure spreading and stockpiling, over-sized, slow moving vehicles, noise from equipment as well as pultry house fans, nighttime operations, including chicken catching, clear cutting of trees, agricultural and forestry operation run-off and wildlife management operations.  All of these conditions are included within generally accepted agricultural and forestry practices.  Worcester County has established the Worcester County Agricultural Reconciliation Board to assist in the resolution of disputes which might arise between persons in this county regarding agricultural operations.  What you observe in the area surrounding the Property on the date of this Notice may not be the activities that will be conducted during other seasons when planting and harvesting are underway.  You have been warned.

The property is, or may be, located in an area where agricultural and forestry activities are given priority over all other activities and considered the first permitted use.

This Addendum, upon execution by both parties, is herewith made an integral part of the aforementioned Agreement.

By signing below, Purchaser acknowledges receipt of the Right to Farm notice.

Date:_____ 5/4/2023 _____            _____ *Robert Smith* _____

Date:_____

                                     SELLER:

                                     NVR, INC. t/a____**Ryan Homes**____

Date:_____ 5/8/2023 _____    By:_____ *Michael Ciabattoni* _____
                                          Vice President

Print Date  5/4/2023

# Customer Data Sheet (CDS)

## Property Identification Information:

| | |
|---|---|
| Division: | MDC |
| Comm: | L6 | Lot: | 0055 | Unit: |
| Legal Lot: | 00000055 | Block: | Sec: |
| Community: | The Landings at Bayside |

## New Address and House Type Information:

12397 HIDDEN BAY DRIVE
(Address)                                    (Uni)

BERLIN                      MD              21811
(City)                      (State)         (Zip)

| | |
|---|---|
| Product Name: | GREENWOOD |
| Set Number/Version: | GNW00-01 |
| Product: | ☑ Per Plan   ☐ Reverse |
| Driveway: | ☐ Left   ☑ Right |

## Sales & Marketing Representative:

Name: Jonathan Carlson          Emp #: 22481

## Sale Information:

| | | |
|---|---|---|
| Realtor Co-op: | ☐ Yes   ☑ No | (See Broker/Realtor Add.) |
| Realtor Name: | | |
| Agency Name: | | |
| Address: | | |
| Email: | | |
| Phone: | | |
| Fee: | $0   Residence Type: Primary | |
| Sale Type: | Customer   Discount: | $0 |
| Referral: | ☐ Yes ☑ No   Fee: | $0 |
| | | (See Referral Addendum) |
| Contingent: | ☐ Yes ☑ No   Expires: | |
| Contract Date: | 5/4/2023   Delivery Date | 12/15/2023 |

## Customer Information:          (Names as they should appear on the deed)

**Purchaser:** Appellation: _____ (Mr/Mrs/Ms/Dr/etc)

Robert                    Smith
First Name    Middle Initial    Last Name

3258608                   rsmith3030@yahoo.com
Customer ID               Email Address

187 Sandyhook Rd                          Unit
Street Address

Berlin                    MD        21811
City                      State     Zip

(301) 639-5833                        (301) 639-5833
Home Phone    Work Phone             Cell Phone

**Co-Purchaser:** Appellation: _____ (Mr/Mrs/Ms/Dr/etc)

First Name    Middle Initial    Last Name

0
Customer ID               Email Address

Street Address                            Unit

City                      State     Zip

Home Phone    Work Phone             Cell Phone

## Price Information:

| | |
|---|---|
| Base Price: | $534,990 |
| Finance Closing Cost (FCC): | $0 |
| Total Optional Features: | $70,620 |
| Homesite Premium: | $30,000 |
| Subtotal Price Before Incentives: | $635,610 |
| Standard Discounts/Incentives: | ($13,995) |
| Purchase Price: | $621,615 |

## Financing Information:

☑ NVR   ☐ Other _____
                              (Outside Lender Addendum Req'd)
| | |
|---|---|
| Contact: | Jennifer Funke   Phone: |
| Settlement Agent: | NVR Settlement Services |
| Contact: | Milton Tyler   Phone: |
| Financing Type: | CONVENTIONAL |

## Deposit Information:

| | |
|---|---|
| Total Hand Money Due: | $40,000 |
| Hand Money at Contract: | $10,000 |
| Date Received: | _____   Check No: |
| 2nd Hand Money: | $30,000   Date Due: 6/4/2023 |
| Date Received: | _____   Check No: |

☐ Payment Plan/Other
(Dep Inst Add Req'd)

## Change Order Summary

| C/O # | Date | Amt Change | Purchase Price | Net |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| Total Revisions | | | | $0 |
| Revised Contract Price | | | | $0 |

## Sale Costs:

| | |
|---|---|
| Cash Discount: | $25,000 |
| Closing Costs: | $25,000 |
| Realtor Costs: | $0 |
| Transfer Tax: | $0 |
| Miscellaneous/Other Costs | $0 |

DocuSign Envelope ID: DFF2F5A4-1830-4F42-BBF9-7E89A1EAB3D5



# GREENWOOD

**MD DELAWARE COAST**
**BAYSIDE LANDINGS RYAN SF**
**MDCL60055**

## Your Information

| | |
|---|---|
| Purchaser: | Robert Smith |
| Co-Purchaser: | |
| Phone: | (301) 639-5833 |
| Email Address: | rsmith3030@yahoo.com |
| Homesite #: | 0055 |
| Address: | 12397 HIDDEN BAY DRIVE |
| City/State/Zip: | BERLIN, MD |
| Sales Rep: | Jonathan Carlson |
| Contract Date: | 05/04/2023 |

## — YOUR PRICING —

| | |
|---|---|
| Base Price: | $534,990 |
| Options Total: | $56,625 |
| Homesite Premium: | $30,000 |
| Sub-Total: | $621,615 |
| Your Purchase Price | $621,615 |

## Your Selections

Product Layout: **Per Plan** | Driveway Location: **Right**

### ELEVATION L — Section Total: $14,995

| Category | Code | Description | Color Location | Quantity | Price | Final Price |
|---|---|---|---|---|---|---|
| | ELL | ELEVATION L | | | | $14,995 |
| ADJUSTED | ELL/SQV | ELEVATION L ~ROOF ACCENT METAL | | | $6,495 ($6,495) | $0 |

### DESIGNER SELECTIONS — Section Total: $10,590

| Category | Code | Description | Color Location | Quantity | Price | Final Price |
|---|---|---|---|---|---|---|
| INCLUDED | DIRN030 | MORGAN | | | | $0 |
| | HH6/LVP | HD SURF UPGRADE 2 (FAMILY ROOM) ~LVP | | | | $4,095 |
| ADJUSTED | DIRC002 | TAHOE PAINTED LINEN | | | $9,995 ($3,500) | $6,495 |

### FOUNDATION — Section Total: $0

| Category | Code | Description | Color Location | Quantity | Price | Final Price |
|---|---|---|---|---|---|---|
| INCLUDED | FGW | GARAGE GRADE BEAMS | | | | $0 |

DocuSign Envelope ID: D7F2F5A4-4680-4F42-B6F8-7E89A1EAB305

**Your Selections**                                    Product Layout: **Per Plan** | Driveway Location: **Right**

| MISC HOUSE | | | | Section Total: | $7,995 |
|---|---|---|---|---|---|
| Category | Code | Description | Color Location | Quantity | Price | Final Price |
| INCLUDED | GGP | WIFI ENABLED GARAGE DOOR OPENER W/REMOTE CONTROLS | | | | $0 |
| INCLUDED | SDF | FRONT DOOR FIBERGLASS | | | | $0 |
| INCLUDED | SQV | ROOF ACCENT METAL | | | | $0 |
| INCLUDED | SUE | SIDING VINYL .046 | | | | $0 |
| | GCC | 2 CAR GARAGE - SIDE ENTRY | | | | $7,995 |

| KITCHEN | | | | Section Total: | $1,795 |
|---|---|---|---|---|---|
| Category | Code | Description | Color Location | Quantity | Price | Final Price |
| INCLUDED | KFN | KITCHEN SINK SINGLE BOWL | | | | $0 |
| | WSW | WINDOW(S) DINING AREA SIDE | | | | $1,795 |

| APPLIANCES | | | | Section Total: | $450 |
|---|---|---|---|---|---|
| Category | Code | Description | Color Location | Quantity | Price | Final Price |
| INCLUDED | 4EZ | NO REFRIGERATOR | | | | $0 |
| INCLUDED | 4GQ | APPLIANCE PKG FREESTANDING 4GQ-SS RANGE/DISHWASHER/MICRO | | | | $0 |
| INCLUDED | 4MA | MICROWAVE | | | | $0 |
| INCLUDED | ICC | DRYER ELECTRIC HOOK-UP | | | | $0 |
| | ICB | RANGE GAS HOOK-UP | | | | $450 |

| STUDY | | | | Section Total: | $1,495 |
|---|---|---|---|---|---|
| Category | Code | Description | Color Location | Quantity | Price | Final Price |
| | MAS | STUDY | | | | $1,495 |

| OWNERS SUITE | | | | Section Total: | $0 |
|---|---|---|---|---|---|
| Category | Code | Description | Color Location | Quantity | Price | Final Price |
| INCLUDED | AMA | OWNER'S BATHROOM SHOWER | | | | $0 |
| INCLUDED | AMS | OWNER'S BATHROOM FRAMED SHOWER DOOR | | | | $0 |
| INCLUDED | AUB | OWNER'S BATHROOM CERAMIC SURROUND | | | | $0 |

| BEDROOMS | | | | Section Total: | $0 |
|---|---|---|---|---|---|
| Category | Code | Description | Color Location | Quantity | Price | Final Price |
| INCLUDED | BDH | FOUR BEDROOM W/LOFT | | | | $0 |

DocuSign Envelope ID: DFF2F5A4-1830-4F42-BBF9-7E89A1EAB3D5

**Your Selections** _____                    Product Layout: Per Plan | Driveway Location: Right

| BATHROOMS | | | | | | Section Total: | $7,995 |
|---|---|---|---|---|---|---|---|
| **Category** | **Code** | **Description** | **Color Location** | **Quantity** | **Price** | | **Final Price** |
| ADJUSTED | ABA | BATHROOM #2 SHOWER | | | $11,995 | ($4,000) | $7,995 |
| INCLUDED | AUD | SECONDARY BATHROOMS CERAMIC SURROUND | | | | | $0 |

| ATTIC | | | | | | Section Total: | $7,995 |
|---|---|---|---|---|---|---|---|
| **Category** | **Code** | **Description** | **Color Location** | **Quantity** | **Price** | | **Final Price** |
| | MBU | ATTIC STORAGE | | | | | $7,995 |

| GENERAL SELECTIONS | | | | | | Section Total: | $325 |
|---|---|---|---|---|---|---|---|
| **Category** | **Code** | **Description** | **Color Location** | **Quantity** | **Price** | | **Final Price** |
| INCLUDED | 555XJ06 | SCHLUTER STRIP EDGING | | | | | $0 |
| | 777XG09 | FINAL PROPERTY SURVEY | | | | | $325 |

| INTERIOR SELECTIONS | | | | | | Section Total: | $0 |
|---|---|---|---|---|---|---|---|
| **Category** | **Code** | **Description** | **Color Location** | **Quantity** | **Price** | | **Final Price** |
| INCLUDED | HFA | HOUSE BASE FINISH | | | | | $0 |
| INCLUDED | SZC | CRAFTSMAN SPECIFICATIONS | | | | | $0 |

| MECHANICAL SELECTIONS | | | | | | Section Total: | $0 |
|---|---|---|---|---|---|---|---|
| **Category** | **Code** | **Description** | **Color Location** | **Quantity** | **Price** | | **Final Price** |
| INCLUDED | 8TA | WIFI ENABLED SMART THERMOSTAT | | | | | $0 |

| ELECTRICAL SELECTIONS | | | | | | Section Total: | $2,990 |
|---|---|---|---|---|---|---|---|
| **Category** | **Code** | **Description** | **Color Location** | **Quantity** | **Price** | | **Final Price** |
| INCLUDED | CPG | CABLE & INTERNET DUAL PORT (1) | | | | | $0 |
| | IKN | LED LIGHT PACKAGE B (BEDROOMS) | | | | | $1,495 |
| | IKI | LED LIGHT PACKAGE A (COMMON AREAS) | | | | | $1,495 |

| PLUMBING SELECTIONS | | | | | | Section Total: | $0 |
|---|---|---|---|---|---|---|---|
| **Category** | **Code** | **Description** | **Color Location** | **Quantity** | **Price** | | **Final Price** |
| INCLUDED | 9SA | FIRE SPRINKLER SYSTEM | | | | | $0 |
| INCLUDED | IHW | WATER HEATER NATURAL GAS TANKLESS | | | | | $0 |

| EXTERIOR SELECTIONS | | | | | | Section Total: | $0 |
|---|---|---|---|---|---|---|---|
| **Category** | **Code** | **Description** | **Color Location** | **Quantity** | **Price** | | **Final Price** |
| INCLUDED | TES | EXTERIOR SHUTTERS | | | | | $0 |

DocuSign Envelope ID: DFCAF5AA-4836-4FK2-BBF99-YE89A1EAE3ED

**Your Selections**

Product Layout: **Per Plan** | Driveway Location: **Right**

| Signature(s) | | | | |
|---|---|---|---|---|
| Purchaser: | | *Robert Smith*<br>C9EE4C7E5293400 | Signature Date: | 5/4/2023 |
| Co-Purchaser: | | | Signature Date: | |
| Seller: | **Ryan Homes** | | | |
| Authorizing Agent: | | *Michael Ciabattoni*<br>4E2162F008024C0 | Signature Date: | 5/8/2023 |

DocuSign Envelope ID: DFF2F5A4-1830-4F42-BBF9-7E89A1EAB3D5

Lot    0055    Block _____    Community    The Landings at Bayside

# DEPOSIT INSTALLMENT
# ADDENDUM TO PURCHASE AGREEMENT

Addendum made this __4__ day of __May,__    __2023__ to a Purchase Agreement by and between NVR, Inc. t/a

__Ryan Homes__ ("Seller") and    __Robert Smith__    and _____ (collectively,

"Purchaser"), dated    __5/4/2023__    (the "Agreement").

The undersigned Purchaser and Seller hereby agree to the following:

1. Paragraph 2 is hereby amended as follows:

    The term "Deposit" shall mean the sum of paragraphs 2(a) and 2(b). Purchaser shall pay the Deposit in the following installments. A failure to make any payment shown below shall be an event of default under the Agreement and Seller shall have all rights and remedies provided under the Agreement including, but not limited to, termination of the Agreement and retention of the Deposit funds paid to such date and the right to collect the funds still due and owing, plus any other damages seller may sustain.

| AMOUNT OF PAYMENT | PAYMENT DUE DATE |
|---|---|
| $  10000 | 5/4/2023 |
| $  30000 | 6/4/2023 |
| $ | |
| $ | |
| $ | |
| $ | |
| $ | |
| $ | |
| $ | |
| $ | |
| $  40000 | Total |

2. All other terms and conditions of the Agreement shall remain unchanged and in full force and effect.

This Addendum, upon execution by both parties, is herewith made an integral part of the aforementioned Agreement.

PURCHASER:

DATE:    5/4/2023 _____    *Robert Smith*
                                                        C09E4C2E57934C0

DATE: _____    _____

SELLER:

NVR, Inc. t/a: **Ryan Homes**

DATE:    5/8/2023 _____    By: *Michael Ciabattoni*
                                                        4B9162F00BD24C0

**MBHR NO. 56**
Updated 01/15/07
Print Date:    05/04/23


EQUAL HOUSING
OPPORTUNITY

DocuSign Envelope ID: DFF2F5A4-1830-4F42-BBF9-7E89A1EAB3D5

NVR - Business Use Only

# COST ESTIMATE WORKSHEET

| | | | | |
|---|---|---|---|---|
| DATE: | 5/4/2023 | GENERATED BY: Jonathan Carlson | HOME SITE: | 0055 |
| COMMUNITY: | The Landings at Bayside | HOME TYPE: GREENWOOD | PURCHASER PHONE: | (301)639-5833 |
| PURCHASER: | Robert Smith | Co-PURCHASER: – | | |

## HOME PRICE

| | | |
|---|---|---|
| Base Price | | $534,990 |
| Homesite Premium | | $30,000 |
| Options Total | | $56,625 |
| **Purchase Price** | | **$621,615** |

| | | | |
|---|---|---|---|
| Mortgage Down Payment | 5.000% | $31,081 | **(A)** |
| **Estimated Mortgage Amount** | | $590,534 | |

### 1st TRUST FINANCING

| | | |
|---|---|---|
| Loan Program | Conventional | $590,534 |
| Fixed / ARM | ARM | |
| Amort. Term | 30 Years | |
| Rate: | 6.500% | |

### BUILDER CASH DISCOUNT ALLOCATIONS

| | |
|---|---|
| Closing Cost Assistance | $25,000 |
| **Total Cash Discount** | **$25,000** |

## ILLUSTRATIVE PAYMENT ANALYSIS

*The following are illustrative interest rate, payment and closing cost amounts only. Your actual rate, payment and costs could be higher. You should get an official Loan Estimate from a licensed mortgage loan originator before choosing a loan.*

### ESTIMATED MONTHLY INVESTMENT

| | | | |
|---|---|---|---|
| Principal and Interest | | | $3,733 |
| MI* | 0.500% | | $246 |
| Property Taxes | $0.957 | Per $100 | $496 |
| Insurance | | | $100 |
| HOA dues | | | $308 |
| **Total Monthly Investment**** | 6.500% | | **$4,883** |

### ESTIMATE OF PREPAID ITEMS

| | | | | |
|---|---|---|---|---|
| Property Tax Escrow | 12 | Months | | $5,949 |
| Insurance Escrow | 3 | Months | | $300 |
| Prepaid Insurance | 12 | Months | | $1,200 |
| Interest to Month End | 15 | Days | | $1,577 |
| HOA initial capital contr | | | | $1,500 |
| **Total Prepaid Items** | | | | **$10,526** **(B)** |

### ESTIMATE OF CLOSING COSTS

| | | | |
|---|---|---|---|
| Closing Costs | 3.000% | | $18,648 |
| **Total Closing Costs** | | | $18,648 |
| Builder Cash Discount | | | ($25,000) |
| **Closing Cost Less Builder Cash Discount** | | | **($6,352)** **(C)** |

### SCHEDULE OF MONIES DUE

| | | |
|---|---|---|
| Initial Earnest Money Deposit | | $10,000 |
| Appraisal Fee | | $550 **(D)** |
| Balance of Earnest Money Deposit | | $30,000 |
| Remaining Portion of Total Cash to Close | | ($4,745) |
| **Total Cash to Close (A+B+C+D)** | | **$35,805** |

*(Down Payment + Total Prepaids + Total Closing Costs + Appraisal Fee)*

* If applicable, your lender may charge an annual mortgage insurance (MI) premium (based on published MI rates from national mortgage insurers), which will be payable with your monthly payment. The example payment assumes an estimated annual MI premium rate for illustrative purposes only. Your actual rate could be higher. Your licensed mortgage loan originator can provide a specific MI premium for your situation.

** The estimated monthly payment amount includes an estimate of principal, interest, taxes, insurance, mortgage insurance and HOA/condo fees. Current mortgage interest rates offered by our affiliate, NVR Mortgage, may have been used to estimate the illustrative annual interest rate. Other monthly fees may be applicable depending on your individual situation. Your licensed mortgage loan originator can provide a specific interest rate for your situation.

THIS IS AN ESTIMATE ONLY. PRICES, INTEREST RATES, AND OTHER FIGURES ARE SUBJECT TO CHANGE WITHOUT NOTICE. THIS IS NOT A REPRESENTATION OR WARRANTY BY SELLER, AND IS NOT LEGALLY BINDING ON SELLER.



Lot 0055 _____                                                                                  Community- Bayside

## COMMUNITY ACKNOWLEDGMENT
### BAYSIDE COMMUNITY ASSOCIATION, INC.
Worcester County, Maryland

The undersigned Purchaser(s) have entered into a Purchase Agreement for the Property known as Lot **00000055** located in the Landings Residential Planned Community (the "Property") AKA Bayside. By signing below, Purchaser(s) acknowledge they have been informed of and understand the following information relating to the Property:

☐ **DRAINAGE, UTILITY, AND ACCESS EASEMENTS:** If the box in the left margin is checked, the Property is encumbered by either a "15' DRAINAGE EASEMENT", "20' UTILITY EASEMENT", "30' LANDSCAPE UTILITY AND DRAINAGE EASEMENT" or a "10' ACCESS EASEMENT", as the same is depicted on the plat entitled, "THE LANDINGS", consisting of twenty three (23) sheets, recorded among the Land Records of Worcester County, Maryland (the **"Plats"**). According to Section 8.1 of the Declaration of Covenants, Conditions and Restrictions for Bayside Community Association, Inc., dated January 17, 2005 (the **"HOA Declaration"**) the Property is subject to a non-exclusive perpetual easement and the right of passage, for the benefit of the Bayside Community Association, Inc. (the **"Association"**) and Lot owners, for the installation, maintenance, repair, replacement, inspection, operation and use of all utilities. The Lot owners and the Association shall have the right, and they are hereby granted an easement and passage to the extent necessary, to enter upon or have a utility company enter upon any portion of the Property in which the utilities lie, to inspect, repair, replace and generally maintain such utilities. Additionally, the Property is subject to a non-exclusive perpetual easement and the right of passage for the drainage and discharge of water from any storm drain, down spout or yard drain situated within the Lots and the owners may not alter or obstruct such drainage or flow of water to the detriment of any Lot. Further, pursuant to General Note 22 on the Plats, blanket easements are created to enter upon the Lots to maintain the drainage and utility area located thereon. **Affected Lots: 31, 32, 36, 37, 44-47, 54, 56, 57, 60, 61, 65, 66, 72-76, 81-93, 95, 97, 105, 110, 113, 122, 123, 130 and 131.**

☒ **STORMWATER MANAGEMENT EASEMENT:** If the box in the left margin is checked, the Property is subject to a Stormwater Management Inspection and Maintenance Agreement, (the "SWM Agreements") for the benefit of Worcester County, Maryland (the "County"). Pursuant to the SWM Agreements the County, its agents and employees, are allowed to enter upon the Lots at reasonable times, for the purpose of inspection, maintaining and repairing the stormwater management facilities located thereon. Furthermore, according to Article 8 of the HOA Declaration, The Association is granted a non-exclusive easement and the right of passage on, through, over, under and across the Lots to maintain, repair and replace any storm water management area or facilities situated within the easement area, including, without limitation, drainage pipes, infiltration trenches, ponds, basins, swales, berms, out-flow control devices, drainage areas, filters, inlets, oil/grit separators and underground facilities, if any. **Affected Lots: 10, 32-35, 37-40, 44-47, 54-57, 60-61, 63, 65-93, 95, 97, 105, 110, 113, 118-122, 127,129, 131,134, 135, 139-143, 146 and 161-163.**

☐ **SHORELINE MAINTENANCE:** Each owner of a Lot abutting the shoreline of the Development ("Waterfront Lot") shall maintain such shoreline and any installations situated thereon, including, but not limited to, piers, docks, breakwaters, rip-rap and/or bulkheads, if any, in good order and repair and free of debris in a manner and with such frequency as is consistent with good property management and community wide standard (as defined in the HOA Declaration). In the event that an owner of any Waterfront Lot shall fail to maintain the abutting shoreline and installations situated thereon, the Association or its agent shall have the right, but not the obligation, to enter upon such Waterfront Lot to inspect, repair, maintain and restore the shoreline and such installations. All costs related to any necessary repairs, maintenance or restoration shall be collectible from the owner of the Waterfront Lot in the same manner as assessments as provided in Article 5 of the HOA Declaration. **Affected Lots: 44-47.**

☒ **WETLAND AND BUFFER AREAS:** Pursuant to Article 12 of the HOA Declaration, Lot owners shall not undertake any excavation, construction, placement of structures, trash, removal of vegetation, or engage in any activities that would violate any governmental regulation within or upon the Wetland or Buffer Areas on any area within the Development. **Affected Lots: All.**

☒ **RIGHT TO FARM:** This Notice is a disclosure of the existence of the Worcester County Right to Farm Law pursuant to the Worcester County Code Zoning and Subdivision Control Article, Section ZS 1-347. Worcester County allows agricultural operations within the county. You may be subject to inconveniences or

Bayside Community Association, Inc Community Acknowledgment MDC
G :NVR\Forms\PURCHAGT\Addenda&Forms\Acknowledgments\MD
062322
MHBR #56

Print Date: 5/4/2023

discomforts arising from such operations, including but not limited to odors, dust, spraying of pesticides including aerial spraying from low flying aircraft, manure spreading and stockpiling, over-sized, slow moving vehicles, noise from equipment as well as poultry house fans, nighttime operations, including chicken catching, clear cutting of trees, agricultural and forestry operation run-off and wildlife management operations. All of these conditions are included within generally accepted agricultural and forestry practices. Worcester County has established the Worcester County Agricultural Reconciliation Board to assist in the resolution of disputes which might arise between persons in this county regarding agricultural operations. What you observe in the area surrounding the Property on the date of this Notice may not be the activities that will be conducted during other seasons when planting and harvesting are underway. You have been warned. The property is, or may be, located in an area where agricultural and forestry activities are given priority over all other activities and considered the first permitted use. **Affected Lots: All.**

DATE:_____5/4/2023_____          Purchaser: _____

DATE:_____          Purchaser: _____

E-FILED; Worcester Circuit Court
Docket: 9/4/2024 10:15 AM; Submission: 9/4/2024 10:15 AM
Envelope: 17873294

# EXHIBIT 2



# New Unit Update – Single Family

To date, NV and Ryan have sold 74 single family homes



**Landings at Bayside - Single Family**



E-FILED; Worcester Circuit Court
Docket: 9/4/2024 10:15 AM; Submission: 9/4/2024 10:15 AM
Envelope: 17873294

# EXHIBIT 3

BOOK: 8663 PAGE: 273

40
20
4111.80
3113.98

# THIS DEED

Made this 27th day of October, 2023, by and between NVR, INC., a Virginia Corporation, ("Grantor"), and Robert Stanley SMITH, ("Grantee(s)").

## WITNESSETH:

THAT for and in consideration of the sum of SIX HUNDRED TWENTY TWO THOUSAND SEVEN HUNDRED NINETY FIVE AND NO/100 DOLLARS ($622,795.00), receipt of which is hereby acknowledged the Grantor does grant, bargain, sell and convey to said Grantee(s), in fee simple, sole owner, the following land and premises situated in Worcester County, State of Maryland, and known and described as:

Lot 55 as shown on the Plat entitled "THE LANDINGS" and recorded in the Land Records of Worcester County, Maryland in Plat Book SVH 196, pages 60-82.

**NOTICE: This Property is subject to a Declaration of Restrictive Covenants recorded among the land Records of Worcester County, Maryland on November 28, 2005, in Liber 4590 at Folio 95.**

BEING THE SAME PROPERTY DESCRIBED IN DEED AND RECORDED AMONG THE AFORESAID LAND RECORDS IN BOOK 8588, AT PAGE 52.

PROPERTY ADDRESS: 12404 Coastal Marsh Drive, Berlin, MD 21811

TAX ID#:      10-747163

Grantor Address:       9720 Patuxent Woods Drive
                       Columbia. MD 21046

Grantee Address:       12404 Coastal Marsh Drive
                       Berlin, MD 21811

Title Insurer:         Stewart Title Guaranty Company

(I), (We), the undersigned Grantee(s) do hereby certify, under penalties of perjury, that the herein-described property is improved for residential purposes and that (I), (We), the undersigned Grantee(s) is/are the owner(s) and occupant(s) of the subject property, and as such are entitled to any applicable state/county transfer tax exemption. Additionally, the subject property is intended to be used as my/our principal residence by actually occupying the residence for at least 7 of the next 12 months and as such are entitled to any applicable recordation tax exemption.

_____
Robert Stanley SMITH

TOGETHER with all improvements thereupon and all rights, alleys, ways, waters, easements, privileges, appurtenances and advantages belonging or appertaining thereunto. **SUBJECT** to all covenants and restrictions of record. **TO HAVE and to hold** the property hereby conveyed unto the said Grantee(s), his (her, their) personal representatives, heirs, successors and assigns, in fee simple, forever.

THE Grantor covenants to warrant specially the property hereby conveyed and to execute such further assurances of said property as may be requisite.

WORCESTER COUNTY CIRCUIT COURT (Land Records) SRB 8663, p. 0273, MSA_CE31_8839. Date available 11/07/2023. Printed 08/05/2024.

BOOK: 8663 PAGE: 274

IN TESTIMONY WHEREOF, the Grantor has caused this Deed to be duly executed on its behalf by its duly authorized Vice President, as the act and deed of the corporation.

WITNESS/ATTEST:                      NVR, INC. a Virginia Corporation

*Ann M Morgan*                       BY: _____ (SEAL)
                                         Greg James
                                         Vice-President

STATE OF ~~MARYLAND~~ DELAWARE:
                              ss:
COUNTY OF __Sussex__ :

    I HEREBY CERTIFY that on this 27ᵗʰ day of __October__, 202__3__, before me, the undersigned officer, personally appeared Greg James who acknowledged himself to be the Vice-President of NVR, Inc., a Virginia Corporation, and that he, as such officer, being authorized so to do, executed the foregoing instrument for the purposes therein contained by signing the name of the Corporation by himself as such officer and certified that this conveyance is not part of a transaction in which there is a sale, lease, exchange or other transfer of all or substantially all of the property and assets of the Corporation, and further certified under penalties of perjury that the Grantor is a resident entity of the State of Maryland as defined in COMAR 03.04.12.02B(11).

    WITNESS my hand and Notarial Seal.

                                     *Ann M Morgan*
                                     NOTARY PUBLIC
                                     My Commission expires: __10-23-26__

Return To:

NVR Settlement Services Of Maryland, Inc.
9720 Patuxent Woods Drive
Columbia, MD 21046

CDS#:  MH1233

TRANSFER TAX PAID
FINANCE OFFICER
WORCESTER COUNTY MARYLAND
By __SH__      Date _11/2/23_
Tax $9,863.98

TAXES FOR WHICH ASSESSMENTS
HAVE BEEN RECEIVED HAVE BEEN
PAID AS OF THIS DATE. _11/2/23_
Worcester County Finance Officer
By __SH__
EXCEPT PERSONAL PROPERTY

PAID
Water & Wastewater
NOV 02 2023
Worcester Co. Treasurer
By: _____

WORCESTER COUNTY CIRCUIT COURT (Land Records) SRB 8663, p. 0274, MSA_CE31_8839. Date available 11/07/2023. Printed 08/05/2024.

BOOK: 8663 PAGE: 275

WORCESTER COUNTY CIRCUIT COURT (Land Records) SRB 8663, p. 0275, MSA_CE31_8839. Date available 11/07/2023. Printed 08/05/2024.

**MARYLAND FORM**
**WH-AR**

**Certification of Exemption from Withholding Upon Disposition of Maryland Real Estate Affidavit of Residence or Principal Residence**

**2022**

Based on the certification below, Transferor claims exemption from the tax withholding requirements of §10-912 of the Tax-General Article, Annotated Code of Maryland. Section 10-912 provides that certain tax payments must be withheld and paid when a deed or other instrument that effects a change in ownership of real property is presented for recordation. The requirements of §10-912 do not apply when a transferor provides a certification of Maryland residence or certification that transferred property is the transferor's principal residence.

**1. Transferor Information**

Name of Transferor  NVR, INC., D/B/A RYAN HOMES, A VIRGINIA CORPORATION

**2. Description of Property** (Street address. If no address is available, include county, district, subdistrict and lot numbers).
12404 COASTAL MARSH DRIVE BERLIN, MD  21811

**3. Reasons for Exemption**

**Resident Status**

[ ] As of the date this form is signed, I, Transferor, am a resident of the State of Maryland.

[✔] Transferor is a resident entity as defined in Code of Maryland Regulations (COMAR)03.04.12.02B(11), I am an agent of Transferor, and I have authority to sign this document on Transferor's behalf.

**Principal Residence**

[ ] Although I am no longer a resident of the State of Maryland, the Property is my principal residence as defined in IRC 121 (principal residence for 2 (two) of the last 5 (five) years) and is currently recorded as such with the State Department of Assessments and Taxation.

**Under penalty of perjury, I certify that I have examined this declaration and that, to the best of my knowledge, it is true, correct, and complete.**

**3a. Individual Transferors**

Witness _____

Name _____ **Date** _____

Signature _____

**3b. Entity Transferors**

Witness/Attest  *Amy M Morgan*

NVR, INC
Name of Entity _____
By _____

GREG JAMES
Name _____ **Date** 10-27-23

VICE PRESIDENT
Title _____

**\*\*** Form must be dated to be valid.

**Note:** Form is only valid if it was executed on the date the Property was transferred and is properly recorded with the Clerk of the Court.

**To the Clerk of the Court:** Only an un-altered Form WH-AR should be considered a valid certification for purposes of Section 10-912.

01/22

**BOOK: 8663 PAGE: 276**

WORCESTER COUNTY CIRCUIT COURT (Land Records) SRB 8663, p. 0276, MSA_CE31_8839. Date available 11/07/2023. Printed 08/05/2024.

THIS IS TO CERTIFY that the within instrument was prepared by or under the supervision of the undersigned, an attorney admitted to practice before the Court of Appeals of Maryland.

Thomas E. Barry

```
LR - Deed (w Taxes)
Recording Fee no CT
                  20.00
Name: nvr inc/smith
Ref:
LR - Surcharge -
linked            40.00
LR - Recordation Tax -
linked         4,111.80
LR - State Transfer
Tax - linked   3,113.98
LR - NR Tax - lkd 0.00
========================
SubTotal:      7,285.78
========================
Total:         7,345.78
11/03/2023  11:53
                 CC23-AD
#17679997 CC0104 -
Worcester
County/CC01.04.02 -
Register 02
```

NOV 0 3 2023  The foregoing instrument filed for record and is accordingly recorded among the land records of Worcester County, Maryland.

_____ Clerk

BOOK: 8663 PAGE: 277

# State of Maryland Land Instrument Intake Sheet

☐ Baltimore City ☒ County: __Worcester__

*Information provided is for the use of the Clerk's Office, State Department of Assessments and Taxation, and County Finance Office only*

**(Type or Print in Black Ink Only – All Copies Must Be Legible)**

| 1 | Type(s) of Instruments | ( Check Box if Addendum Intake Form is Attached.) | | | |
|---|---|---|---|---|---|
| | | X Deed | Mortgage | Other | Other |
| | | X Deed of Trust | Lease | | |
| 2 | Conveyance Type Check Box | X Improved Sale | Unimproved Sale | Multiple Accounts | Not an Arms- |
| | | Arms-Length *[1]* | Arms-Length *[2]* | Arms-Length *[3]* | Length Sale *[9]* |
| 3 | Tax Exemptions (if Applicable Cite or Explain Authority) | Recordation | | | |
| | | State Transfer | | | |
| | | County Transfer | | | |

| 4 | | Consideration Amount | | Finance Office Use Only | |
|---|---|---|---|---|---|
| | Consideration and Tax Calculations | Purchase Price/Consideration | $ 622,795.00 | **Transfer and Recordation Tax Consideration** | |
| | | Any New Mortgage | $560,516.00 | Transfer Tax Consideration | $ |
| | | Balance of Existing Mortgage | $ | X ( ) %= | $ |
| | | Other | $ | Less Exemption Amount | $ |
| | | | | Total Transfer Tax = | $ |
| | | Other | $ | Recordation Tax Consideration | $ |
| | | | | X ( ) per $500 = | $ |
| | | Full Cash Value | $ | TOTAL DUE: | $ |

| 5 | Fees | Amount of Fees | Doc 1 | Doc 2 | Agent: |
|---|---|---|---|---|---|
| | | Recording Charge | $60.00 | $ 60.00 | |
| | | Surcharge | $ | $ | Tax Bill: |
| | | State Recordation Tax | $4,111.80 | $ | |
| | | State Transfer Tax | $3,113.98 | $ | C.B. Credit: |
| | | County Transfer Tax | $2,863.98 | $ | |
| | | Other | $ | $ | Ag. |
| | | Other | $ | $ | Tax/Other: |

| 6 | Description of Property SDAT requires submission of all applicable information. A maximum of 40 characters will be indexed in accordance with the priority cited in the Real Property Article Section 3-104(g)(3)(i) | District | Prop. Tax ID No.(1) | Grantor/Liber/Folio | Map | | Parcel No. | Var. LOG |
|---|---|---|---|---|---|---|---|---|
| | | | 10-747163 | | | | | (s) |
| | | Subdivision Name | Lot(3a) | Block (3b) | Sect/AR (3c) | Plat Ref. | SqFt/Acreage(4) | |
| | | THE LANDINGS | 55 | | | | | |
| | | Location/Address of Property Being Conveyed (2) | | | | | | |
| | | 12404 Coastal Marsh Drive, Berlin, MD 21811 | | | | | | |
| | | Other Property Identifiers (if applicable) | | | Water Meter Account No. | | | |
| | | Residential [X] or Non Residential [ ] Fee Simple [ X ] or Ground Rent [ ] Amount: | | | | | | |
| | | Partial Conveyance? [ ] Yes [X] No Description/Amt. of SqFt/Acreage Transferred: | | | | | | |
| | | If Partial Conveyance, List Improvement Conveyed: | | | | | | |

| 7 | Transferred From | Doc 1 –Grantor(s) Name(s) | Doc 2 – Grantor(s) Name(s) |
|---|---|---|---|
| | | NVR Inc., a Virginia Corporation | Robert Stanley SMITH |
| | | Doc 1-Owner(s) of Record, if Different from Grantor(s) | Doc 2-Owner(s) of Record, if Different from Grantor(s) |

| 8 | Transferred To | Doc 1 –Grantee(s) Name(s) | Doc 2 –Grantee(s) Name(s) |
|---|---|---|---|
| | | Robert Stanley SMITH | James M. Sack |
| | | New Owner's (Grantee) Mailing Address | |
| | | 12404 Coastal Marsh Drive, Berlin, MD 21811 | |

| 9 | Other Names to Be Indexed | Doc 1 – Additional Names to be Indexed (Optional) | Doc 2 – Additional Names to be Indexed (Optional) |
|---|---|---|---|
| | | | NVR Mortgage.Finance, Inc. |

| 10 | Contact/Mail Information | Instrument Submitted by or Contact Person | [X] Return to Contact Person |
|---|---|---|---|
| | | Name: NVR Settlement Services Of Maryland, Inc. | |
| | | Address:: 9720 Patuxent Woods Drive | ☐ Hold for Pickup |
| | | Columbia, MD 21046 | |
| | | Phone: (410) 540-8860 | ☐ Return Address Provided: |

| 11 | | IMPORTANT: *BOTH THE ORIGINAL DEED AND A PHOTOCOPY MUST ACCOMPANY EACH TRANSFER* |
|---|---|---|
| | Assessment Information | X Yes No Will the property being conveyed be the grantee's principal residence? |
| | | Yes [X] No Does transfer include personal property? If yes, identify: |
| | | Yes [X] No Was property surveyed? If yes, attach copy of survey (if recorded, no copy required) |

**Assessment Use Only – Do Not Write Below This Line**

| Terminal Verification | | Agricultural Verification | | Whole | Part | Tran.Process Verification | |
|---|---|---|---|---|---|---|---|
| Transfer No.: | | Date Received: | | Deed Reference: | | Assigned Property No.: | |
| Year | 20 | 20 | Geo. | | Map | Sub. | Block |
| Land | | | Zoning | | Grid | Plat | Lot |
| Buildings | | | Use | | Parcel | Section | Occ.Cd. |
| Total | | | Town Cd. | | Ex. St. | Ex. Cd. | |
| REMARKS: | | | | | | | |

WORCESTER COUNTY CIRCUIT COURT (Land Records) SRB 8663 p. 0277 MSA _ CE31 8839. Date available 11/07/2023. Printed 08/05/2024.

E-FILED; Worcester Circuit Court
Docket: 9/4/2024 10:15 AM; Submission: 9/4/2024 10:15 AM
Envelope: 17873294

# EXHIBIT 4



THE LANDINGS
RESIDENTIAL PLANNED COMMUNITY

Frank G. Lynch, Jr.
& Associates, Inc.

SURVEYING · LAND PLANNING

SHEET 12 OF 23